**In the Interest of A.M.**

**No. 01–99–01286–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 5, 2001.

---

Miriam Judith Riskind, Houston, for appellant.

Patrick C. Jaggers, Houston, for intervenor.

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Panel consists of Justices WILSON, HEDGES, and SMITH.*

## OPINION

WILSON, Justice.

Appellant, Terry Martinez, brings this suit in the interest of A.M., her minor child. After the Texas Department of Protective and Regulatory Services (TDPRS) withdrew its petition for termination, the trial court terminated Martinez's parental rights and the unknown biological father's parental rights in response to the petition for termination and adoption filed by Faith and Lawrence Troutman, appellees. The trial court granted the Troutmans' petition to adopt A.M. We affirm.

### Facts

On June 10, 1997, Martinez gave birth to A.M., and both mother and child tested positive for cocaine at that time. Two days later, TDPRS obtained temporary managing conservatorship of A.M. when it filed its suit for the protection of a child in an emergency and original petition to terminate the parent-child relationship. TDPRS immediately placed A.M. with the Troutmans [1] as foster parents through a placement agency, Catholic Charities.

After conducting a home study for permanent placement, TDPRS recommended A.M. be placed with an elderly, disabled, maternal great-aunt. On December 18, 1997, the Troutmans intervened in the original suit between TDPRS and Martinez. On January 15, 1998, TDPRS removed A.M. from the Troutmans' home

---

1. Faith and Lawrence Troutman are not related to Martinez or A.M.'s biological father.

and placed A.M. with a maternal great-aunt.

On January 27, 1998, the trial court heard the Troutmans' request for injunctive relief. At that hearing, the parties agreed, on the record, if the placement failed and A.M. came back under TDPRS care, then TDPRS would return A.M. to the Troutmans.

In February 1998, the great-aunt fell ill and passed away. The great-aunt's brother and sister-in-law, Candy and Larry Gaytan, provided care for A.M. during the great-aunt's illness and after her death. After learning of the great-aunt's death, the Troutmans sought an emergency hearing to have A.M. returned to them. After the trial court ruled in their favor, the Troutmans took custody of A.M. on April 15, 1998. At that point, the Gaytans intervened in the suit. Granting their intervention, the trial court granted the Gaytans visitation on the first, third, and fifth weekends of the month. Following the great-aunt's death, TDPRS recommended a kinship placement[2] with the Gaytans.

In November 1998, TDPRS, the child's ad litem, and the Gaytans requested the trial court strike the Troutmans' original motion to intervene, and they alleged the Troutmans lacked standing to intervene. The associate judge of the district court denied the motions to strike, and the presiding judge upheld the ruling. Before trial, TDPRS decided not to pursue the termination proceeding, which left the Troutmans, the Gaytans, and Martinez in the trial court. Only Martinez appeals the trial court's decision to grant standing to the Troutmans as intervenors.

### Discussion

In a single point of error, Martinez argues the trial court erred in failing to strike the Troutmans' plea in intervention because they lacked standing.

■ In termination cases, the trial court enjoys discretion when deciding a motion to strike an intervention. *Mendez v. Brewer,* 626 S.W.2d 498, 499 (Tex.1982). To be an abuse of discretion, the trial court's decision must be arbitrary or unreasonable. *Pratt v. Tex. Dep't of Human Resources,* 614 S.W.2d 490, 494 (Tex.Civ. App.—Amarillo 1981).

There are two statutes that control standing to file an original suit. *See* TEX. FAM.CODE ANN. §§ 102.003, 102.005 (Vernon Supp.2000). Both parties argue we must resolve an apparent conflict between the statutes. The statutes in question are sections 102.003 and 102.005 of the Texas Family Code. Section 102.003 states who may file an original suit affecting the parent-child relationship. TEX. FAM.CODE ANN. § 102.003 (Vernon Supp.2000). Section 102.005 states who may file an original suit requesting only an adoption or termination of the parent-child relationship. TEX. FAM. CODE ANN. § 102.005 (Vernon Supp.2000). TDPRS filed the original suit to terminate the parent-child relationship in which the Troutmans intervened.

■ However, intervening and filing the original suit are distinct legal actions. *McCord v. Watts,* 777 S.W.2d 809, 812 (Tex.App.—Austin 1989); *In the Interest of M.T,* 21 S.W.3d 925, 926 (Tex.App.— Beaumont, no pet.) (following distinction in parental termination and adoption case). Standing for intervening in a suit and filing an original suit are not necessarily the same. *McCord,* 777 S.W.2d at 812. Therefore, we resolve the issue by looking to the statutory language directly addressing standing of intervenors. By resolving the question in this manner, we read the

---

**2.** A "kinship placement" refers to a placement in a relative's home.

statute in its entirety. Recognizing the best interest of the child controls, the legislature has created at least three possible ways in which the Troutmans, as foster parents, could adopt A.M.

 The Texas Family Code provides that the trial court may grant a "grandparent *or other person* deemed by the court to have had substantial past contact with the child" leave to intervene in a pending suit filed by an authorized party. TEX. FAM. CODE ANN. § 102.004 (Vernon Supp.2000) (emphasis added); *see, e.g., In the Interest of M.T.*, 21 S.W.3d at 926. Thus, a party who cannot file a suit affecting the parent-child relationship may be permitted to intervene in a suit filed by a qualified party. *In the Interest of M.T.*, 21 S.W.3d at 927. The legislature decided the overriding concern for the best interest of the child when a termination suit is already pending was greater than the concern for the privacy of the parties. *See id.* In so doing, it created a relaxed standing rule for intervention. *See id.*

 Here, TDPRS filed the original suit to terminate the parent-child relationship in which the Troutmans intervened, seeking to terminate the parent-child relationship and adopt A.M. Ultimately, TDPRS decided not to pursue the termination, and the trial court's final order terminating the parent-child relationship is based on the Troutmans' request for termination.

A.M. was less than two days old when the Troutmans took her into their home as foster parents. At the time they filed the plea in intervention, the Troutmans had cared for A.M. for the seven months since her birth. When the placement with the great-aunt had to be reconsidered after her death, the Troutmans again took A.M. into their home. At the time the Troutmans' standing to intervene was challenged, they had cared for A.M. 14 out of the 17 months of her life.

The record shows A.M. spent nearly all of her life up to the time of the filing of the intervention and more than 80 percent of her life up to the time of the challenges to the invention with the Troutmans. Therefore, the record supports the trial court's implied finding that the Troutmans were other persons with past substantial contact sufficient to authorize their petition under Texas Family Code section 102.004.

We overrule Martinez's sole point of error.

### Conclusion

We affirm the trial court's judgment.