Andrew B. JAMES, Appellant,

v.

The CITY OF HOUSTON, Texas, Lee P. Brown, and Mary DesVignes–Kendrick, Appellees.

No. 14–03–00612–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 22, 2004.

Rehearing Overruled July 15, 2004.

David T. Lopez, Houston, for appellants.

John Fisher, Houston, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

LESLIE BROCK YATES, Justice.

Appellant Andrew B. James sued appellees, the City of Houston, Texas, Lee P. Brown, and Mary DesVignes–Kendrick, alleging James was terminated in retaliation for his exercise of the constitutionally-protected right to free speech and that he was deprived of procedural due process at his post-termination hearing. At issue is whether James is barred by the doctrine of collateral estoppel from asserting his state-law claims when his parallel federal-law claims were dismissed in a separate proceeding in federal court. We affirm.

### Factual and Procedural Background[1]

James was employed by the City of Houston as Assistant Director of the Ad-

---

1. Our record does not contain a transcript of the federal court proceedings. Accordingly,

ministrative Support Division of the Department of Health and Human Services ("DHHS"). James had been an employee of the City for twenty-five years and coordinated the City's acquisition, development, and operation of Multi Service Centers ("MSCs"), which provide information and services to the City's residents.

In November of 1996, James purchased residential property in Houston's Third Ward, at 3024 Holman. The three owners signed quitclaim deeds transferring their total interest to James, who recorded the deeds in Harris County. The original owners and James then contracted to give the original owners 82% of any sales proceeds if James sold the property within ten years of the date of transfer. Thus, the contract terminated by its own terms in November of 2006, presumably leaving James with ownership of the real property and no further obligations to the original owners. As an assistant director, James was required to report all personal financial holdings, but he failed to report the 3024 Holman property on his financial disclosure statement filed in October of 1997.

At work, James planned the development of an MSC for the Third Ward. Construction was scheduled to begin in late spring or summer of 1998. During early 1998, James Douglas, then president of Texas Southern University, began discussions with the Third Ward Redevelopment Council and the Houston Independent School District about working with the City to build a joint-use baseball complex next to the planned Third Ward MSC. The City held a town-hall meeting on May 9, 1998, during which a Third Ward community leader proposed to Brown, then mayor of the City, that the Third Ward MSC be expanded to include the baseball complex. The proposed expansion would require moving the MSC building approximately 155 feet.

James opposed the expansion. According to his testimony in his federal case, James thought expansion would further delay the completion of the Third Ward MSC. James voiced his opposition at various community and department meetings. He could not identify precisely the various occasions at which he expressed his opposition, but he specifically recalled sharing his concerns with DesVignes-Kendrick, the director of DHHS, and Earl Travis, James's immediate supervisor, as well as at various community meetings.

As a follow-up to the town-hall meeting, the City organized a community gathering to discuss the proposal on June 11, 1998. The next day, James and other City employees physically walked the land encompassed by the proposed expansion. According to appellees, James "even then, failed to disclose his ownership of the very property they walked on." James did not disclose his ownership interest until early July of 1998. According to DesVignes-Kendrick, when she was informed of the ownership she immediately instructed James to recuse himself from the development of the Third Ward MSC. Appellees claim that, after being asked to divorce himself entirely from the Third Ward MSC project, James attended at least one more community meeting and obtained a copy of

---

the factual background detailed in this opinion is largely borrowed from the Fifth Circuit Court of Appeal's opinion, which adopted its statement of facts from the federal district court's memorandum opinion. *See James v. City of Houston,* No. 01–20979, slip op. at 2, 48 Fed.Appx. 916 (5th Cir. Sept. 12, 2002).

The court stated that it had incorporated the district court's facts because James had used those facts in his briefing; the court thus concluded it was safe to assume the facts had been presented in the light most favorable to James.

the confidential report on the project's feasibility.

Once James realized the City was abandoning the original plans in favor of expansion, he hired an attorney to represent him in the condemnation proceedings. The City appraised James's property at $117,899, and offered him that sum in December of 1998. James did not accept the offer. The summary-judgment evidence in the federal case does not reveal why.

In February of 1999, Brown initiated an investigation into whether James had acted illegally or improperly in connection with his purchase of 3024 Holman or the expansion proposal. DesVignes–Kendrick reassigned James to work at home with full pay and benefits pending the outcome of the investigation by the Office of the Inspector General ("OIG").

Concurrently on August 18, 1999, a grand jury considered evidence of James's criminal wrongdoing and declined to indict. Within a couple of weeks, the OIG issued its report, concluding that James had no knowledge of expansion plans for the Third Ward MSC when he acquired the Holman property and did not use his influence to instigate the expansion. The OIG found insufficient evidence to prove or disprove the charges of perjury and misuse of official information. The OIG found sufficient evidence to conclude that James had violated municipal ordinances by filing a false financial disclosure statement.

Following the investigation, DesVignes-Kendrick recommended James be demoted to Deputy Assistant Director. In a letter, DesVignes-Kendrick notified James that she had "complete[ly] lost trust and confidence in [his] judgment in [his] current position." She listed, as supporting reasons, James's tardy disclosure of property ownership and his failure to recuse himself when she so requested. The letter also notified James that he was scheduled for a

meeting at which he and his representative would discuss the allegations and recommendation. James and his attorney attended the meeting on November 4, 1999.

Based on James's response to the allegations at the meeting, DesVignes-Kendrick decided that the City should terminate, rather than demote, James. DesVignes–Kendrick issued another notice letter outlining her recommendation and scheduling a meeting with James and his attorney. The allegations included the additional charge that James had abused his power as a supervisor by asking an employee to notarize the quitclaim deeds outside the presence of the signatories. She also cited concerns that surfaced during the meeting about his lack of candor and judgment, including his continued refusal or inability to perceive and recognize the potential conflicts of interest. James admits attending the termination meeting on March 30, 2000, with his attorney, but denies he had an opportunity to further explain his actions.

Brown met with DesVignes-Kendrick to discuss her recommendation. Both Brown and DesVignes-Kendrick deny discussing any of James's alleged protected speech activities. Brown agreed with DesVignes-Kendrick's recommendation and issued a letter formalizing James's termination, iterating the above allegations, and listing various policies and ordinances violated by James.

James appealed to the Civil Service Commission for Municipal Employees of the City of Houston (the "Civil Service Commission"), which held a hearing and permitted James to present witnesses and exhibits. The Civil Service Commission denied James's appeal on June 23, 2000. James sued in state court, and the City removed to federal court. James alleged

violations of his due process and free speech rights under the federal Constitution, similar claims under the Texas Constitution, and a state-law claim to review the Civil Service Commission's decision. Appellees filed a motion for summary judgment, which was granted with regard to the federal-law claims. The federal district court remanded the state-law claims to state court. The decision by the federal district court was affirmed on appeal. After resolution of the federal-law claims, appellees filed a motion for summary judgment on James's remaining state-law claims on the ground that James was collaterally estopped from asserting his claims under the Texas Constitution because the same issues were litigated and resolved against him in the federal court action. Appellees alternatively sought summary judgment for Brown and Des-Vignes–Kendrick on the basis of official immunity. In its ruling, the trial court specifically found that James's claims were barred by collateral estoppel. The order does not mention the alternative ground of relief urged on behalf of Brown and Des-Vignes–Kendrick.

### Standard of Review

James contends the trial court erred in granting appellees' motion for summary judgment. Appellees filed a traditional motion for summary judgment, and therefore had the burden to show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. TEX.R.CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). As defendants, they must conclusively negate at least one essential element of each of James's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Appellees' motion rested on the affirmative defense of collateral estoppel. In deciding

whether a disputed material fact issue exists precluding summary judgment on appellees' affirmative defense, we resolve every reasonable inference in favor of James and take all evidence favorable to him as true. *See* id. at 911.

### Analysis

Appellees assert that this entire appeal can be resolved by answering the question of whether James's state-law claims are barred by the doctrine of collateral estoppel because his parallel federal-law claims were dismissed in a separate proceeding in federal court. We agree and therefore address James's four issues in our discussion of whether the doctrine of collateral estoppel bars his state-law claims.

■■■ The doctrine of collateral estoppel is used to prevent a party from relitigating an issue that it "previously litigated and lost." *Quinney Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex.1999); *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 869 (Tex.App.-Houston [14th Dist.] 2000, no pet.). To invoke collateral estoppel successfully, a party must establish the following elements: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Spera*, 25 S.W.3d at 869. Whether collateral estoppel applies is a question of law for the court to decide. *Id.* at 870.

We must first ascertain what issues were decided in the federal court action to determine whether those findings might preclude James's claims in the state court action. The Fifth Circuit Court of Appeals, in affirming the district court's opin-

ion, made the following factual determinations and conclusions:

- James did not dispute that he failed to report the real property on his financial disclosure forms.
- The OIG report concluded that his failure to report was material, false, misleading, and violated a municipal ordinance.
- The failure to report, standing alone, justified James's dismissal regardless of the content of his speech.
- James presented evidence that Brown and possibly DesVignes-Kendrick supported expansion, but did not present a shred of summary-judgment evidence that they would have terminated him for this reason.
- James had a significant interest in continued employment.
- The risk of erroneous deprivation was minimal in the City's pre-termination process and during the Civil Service's post-termination hearing because (1) James had notice of the City's complaints against him and had two opportunities with his counsel to rebut the charges before termination; and (2) the Civil Service Commission reviewed James's claim for a full day and considered both testimonial and documentary evidence.
- The City and the State have an interest in placing some limits on the procedures they guarantee through internal, civil service commission, and judicial review.
- The benefits of additional procedures would appear minimal, given the procedures already in place.
- James failed to create a fact issue about whether his discharge conformed with due process.

Despite the Fifth Circuit's findings, James contends that the doctrine of collateral estoppel cannot apply to his state-law claims because (1) his federal-and state-law claims were presented in one lawsuit; (2) the federal court remanded and did not rule on his state-law claims; and (3) the issues to be determined in the state court action are different from those essential to the determination of the federal claims. We disagree.

■ We have previously determined that the doctrine of collateral estoppel can be applied to state-law claims after remand, even when those claims were not ruled upon by the federal court and were presented in one lawsuit. *Engstrom v. First Nat'l Bank of Eagle Lake*, 936 S.W.2d 438, 443 (Tex.App.-Houston [14th Dist.] 1997, writ denied). Additionally, we do not view a federal court's remand of state-law claims prior to trial as recognition that the federal court viewed the state-law claims as presenting different issues for consideration. *Id.* at 443 (stating that " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims' ") (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

Moreover, the City has demonstrated that the issues to be determined in the state-law action are the same as those that were litigated and resolved against James in the proceeding in federal court. In his first issue, James alleges due process was violated when the Civil Service Commission placed the burden of proof on him during its hearing to review the City's decision to terminate him. That claim is predicated on Article I, Section 19 of the Texas Constitution and the due process clause of the Fourteenth Amendment to

the United States Constitution. The federal court used the accepted *Mathews* factors to reach its conclusion that James received due process.[2] *James*, No. 01–20979, slip op. at 8, 48 Fed.Appx. 916 ("We balance three factors to determine whether a government has afforded constitutionally adequate procedures: (1) the private interest affected; (2) the risk of erroneous deprivation from current and proposed procedures; and (3) the government's interest.") (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The City contends that, because Texas courts have determined there is a lack of meaningful distinction between the protections provided under the federal and Texas Constitutions, the finding of the Fifth Circuit that James received due process sufficient under federal standards precludes a contrary finding under the Texas Constitution. We agree.

The Texas Supreme Court has determined that the procedural due process protections provided under the Texas Constitution mirror those provided under the federal Constitution. *See Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995) ("While the Texas Constitution is textually different in that it refers to 'due course' rather than 'due process,' we regard these terms as without meaningful distinction."). Although Texas state courts are not bound by federal due process jurisprudence, "we have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Id.* Importantly, Texas courts interpreting procedural due process claims have applied the *Mathews* factors to determine whether due course of law was provided under the Texas Constitution. *See Than*, 901 S.W.2d at 930 (applying *Mathews* factors to dismissed graduate student's due process claim under the Texas Constitution); *Merritt v. Harris County*, 775 S.W.2d 17, 21 (Tex.App.-Houston [14th Dist] 1989, writ denied) (noting that the same due process analysis is required under either the federal or Texas Constitutions and applying the *Mathews* factors to tenants' due process claims). James does not argue that a state court should have used a different standard to evaluate his Texas due process claim. Nor has he argued that the application of the *Mathews* factors to his due process claim under the Texas Constitution would have been inappropriate.[3] Accordingly, we find that, be-

**2.** In his fourth issue, James argues he is entitled to judicial review of the Civil Service Commission's decision because he asserted a constitutional violation. James has received judicial review of the Civil Service Commission's decision in the federal court action and in the trial court below. His fourth issue is overruled.

**3.** James argues that the federal court inappropriately weighed the *Mathews* factors in reaching its decision. Specifically, he disagrees with the federal court's application of a federal case, rather than a Texas case, in balancing the *Mathews* factors. However, the federal court's decision is final and is not before us on appeal. James also contends that, because the federal court did not rely on a Texas case, *Dallas County Civil Service Commission v. Warren*, 988 S.W.2d 864 (Tex. App.-San Antonio 1999, no pet.), the federal court refused to apply clearly established Texas law to his due process claim and thus his state-law claim cannot be barred by collateral estoppel. James's reliance on *Warren* is misplaced. In *Warren*, the Fourth Court of Appeals held that a decision reached by an administrative-review board that placed the burden of proof on an employee did not meet constitutional minimum requirements. 988 S.W.2d at 870–72. The Fourth Court of Appeals did not review Warren's due process claim under the Texas Constitution; it reviewed Warren's claim asserted under section 1983 of title 42 of the United States Code using the *Mathews* factors. *See id.* at 868, 870. Thus, although *Warren* is a Texas case addressing the burden of proof in an administrative appeal, it does not provide Texas law on the issue. Rather, it offers a Texas's

cause Texas courts apply the *Mathews* factors to determine whether a person has been afforded due course of law under the Texas Constitution, the City met its burden of proving that collateral estoppel precludes James's state-law due process claim. The facts determinative of this state-law claim were fully and fairly litigated by the same parties in the federal proceeding and those facts were essential to the federal court's judgment. James's first issue is overruled.

■ In his second issue, James contends his free speech claim .cannot be barred by collateral estoppel because (1) he alleges a violation involving a prior restraint, and a prior restraint on expression is presumptively unconstitutional, and (2) freedom of expression protections are greater under Article I, section 8 of the Texas Constitution than they are under the First Amendment to the United States Constitution. The City argues that the determination made by the Fifth Circuit that James would have been terminated regardless of his speech precludes any finding under the Texas Constitution that James's right to free speech was violated. We agree.

James contends that his claim involves a prior restraint because, in asking James to immediately recuse himself from the development of the Third Ward MSC, DesVignes-Kendrick sought to bar James from speaking out on the project. Although a prior restraint is presumptively invalid, the directive from DesVignes-Kendrick to James is not a prior restraint. *See Alexander v. United States*, 509 U.S. 544, 550–51, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993) (explaining that the term "prior restraint" is used to describe administrative and judicial orders forbidding certain communica-

tions issued in advance of the time that such communications are to occur, and finding that a prior restraint must place an actual legal impediment to the speech activity); *Reuters Am., Inc. v. Sharp*, 889 S.W.2d 646, 653 (Tex.App.-Austin 1994, writ denied) (using rationale in *Alexander* to find economic regulation was not a prior restraint).

Moreover, the mere assertion that freedom of expression protections are broader under the Texas Constitution than under the federal Constitution means nothing. *Bentley v. Bunton*, 94 S.W.3d 561, 577–78 (Tex.2002). The Texas Supreme Court has recognized that " 'in some aspects our free speech provision is broader than the First Amendment.' " *Comm'n for Lawyer Discipline v. Benton*, 980 S.W.2d 425, 434 (1998) (quoting *Davenport v. Garcia*, 834 S.W.2d 4, 8 (Tex.1992)). "However, to assume automatically 'that the state constitutional provision *must* be more protective than its federal counterpart illegitimizes any effort to determine state constitutional standards.' If the Texas Constitution is more protective of a particular type of speech, 'it must be because of the text, history, and purpose of the provision.' " *Id.* (quoting *Operation Rescue–Nat'l v. Planned Parenthood of Houston and S.E. Tex., Inc.*, 975 S.W.2d 546, 559 (1998)) (internal citations omitted). Notably, the broader protection language of Article I, section 8 appears to address laws that are prior restraints. *Reuters*, 889 S.W.2d at 653 (finding that the Texas Constitution afforded no broader protections than the federal Constitution because the economic regulation at issue was not a prior restraint). Because DesVignes-Kendrick's direction was not a prior restraint and James has made no attempt to show how

courts application of federal law to the facts of a particular case. Accordingly, it is not evidence that the Texas Constitution provides

any additional procedural due process protections than the federal Constitution.

the text, history, or purpose of the Texas Constitution affords him greater protection than the First Amendment with regard to his claim, we find that James's free speech claim is afforded no greater protection under the Texas Constitution.

In this case, the federal court applied the *Mt. Healthy* factors to evaluate James's free speech claim. *James*, No. 01–20979, slip op. at 6, 48 Fed.Appx. 916.[4] A dispositive factor in that test is whether the employee would have been terminated regardless of his speech activity. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (finding that "District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct"). Accordingly, we find that the City met its burden of proving that collateral estoppel precludes James's state-law free speech claim because the particular issue was fully and fairly litigated by the same parties in the federal proceeding and this issue was essential to the federal court's judgment. James's second issue is overruled.

Having overruled James's first, second, and fourth issues,[5] we affirm the judgment of the trial court.

---

4. The same factors have been used in discussing free speech claims under the Texas Constitution. *See Nelson v. Clements*, 831 S.W.2d 587, 589 (Tex.App.-Austin 1992, writ denied) (discussing the *Mt. Healthy* factors in connection with professor's free speech claim under the Texas Constitution).

5. Because we found James's claims are barred by the doctrine of collateral estoppel, we need not address his third issue regarding official immunity.