Affirmed and Memorandum Opinion filed July 17, 2007








Affirmed and Memorandum Opinion filed July 17, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

 NO. 14-05-00410-CV 

NO. 14-06-00102-CV

____________

 

IN THE INTEREST OF H. B. N. S., A
CHILD

____________

 

DWIGHT BOLTON AND PAULA BOLTON, Appellants

 

V.

 

DAVID SCHULTZ AND DEBORAH SCHULTZ, Appellees

 



 

On Appeal from the 387th
District Court

Fort Bend County, Texas

Trial Court Cause Numbers 00CV114743 & 05CV142097

 



 

M E M O R A N D U M   O P I N I O N

In this consolidated appeal, we address multiple issues
arising out of the efforts by two, unrelated couples to adopt H. B. N. S., a
minor child.  We affirm.








Factual and Procedural Background

H. B. N. S. was born on July 23, 1998.  For reasons not
relevant to this appeal, the birth mother, Christina Smith, allowed H. B. N. S.
to go home from the hospital with appellants, Dwight and Paula Bolton (the ABoltons@).  Smith had
originally met Paula Bolton when Paula Bolton handled a foreclosure for Smith=s father.  While
the  Boltons agreed to take H. B. N. S. home, they did not do so with the
intention of eventually adopting her.

In the fall of 1998, Danielle Schultz started babysitting
H. B. N. S. for the Boltons.  The Boltons, through their church, sought out
Danielle as a babysitter.  At that time, Danielle was a teenager living with
her parents and she brought H. B. N. S. to her parents= home.  Danielle=s parents are
appellees, David and Deborah Schultz (the ASchultzes@).  H. B. N. S.=s initial stay
with the Schultzes, which was supposed to last a single night, extended to
several days.  From that start, H. B. N. S. spent large amounts of time with
the Schultzes and they came to consider her a member of the family.  The
Schultzes purchased the equipment to care for H. B. N. S. in their home.  In
addition, as H. B. N. S. got older, she was given her own room at the Schultzes= home as well as
at their lake house.  The Schultzes provided H. B. N. S. with food and clothing
as well as medical and dental care.  H. B. N. S. participated in holiday and
other special celebrations with the Schultzes and traveled extensively with
them on family vacations.

In 2000, when H. B. N. S. was almost two years old, Smith
executed a Revocable Mother=s Affidavit of Relinquishment of Parental
Rights designating the Boltons as the Managing Conservators of H. B. N. S.  The
Boltons then filed an Original Petition for Termination of the Parent-Child
Relationship and Adoption in July 2000.  During the summer of 2003 the Boltons
attempted to finalize their adoption of H. B. N. S., but the court expressed
concerns about a pending criminal charge against Dwight Bolton and declined to
go forward 








with
the adoption at that time.[1]

As they learned more about the Boltons, the Schultzes
became concerned about the stability of the Boltons= home and decided
to take legal action regarding H. B. N. S.  On August 22, 2003 the Schultzes
filed two original proceedings respecting H. B. N. S.  The first suit, Cause
No. 03-CV-131572, was an Original Petition for Termination and Adoption of a
Child.  In the second action, Cause No. 03-CV-131574, titled Original Petition
in Suit Affecting the Parent-Child Relationship, the Schultzes sought primary
conservatorship of H. B. N. S.  The Boltons answered the conservatorship suit
and challenged the Schultzes= standing.  The Boltons also answered the
termination suit and requested that the court abate the case until the issue of
the Schultzes= standing was addressed.  In response, the Schultzes
filed a motion to consolidate all of the cases related to H. B. N. S.








On October 14, 2003 the trial court commenced a hearing to
address the Schultzes= request to consolidate the three cases
and the Boltons= challenge to the Schultzes= standing.  The
trial court heard testimony on both October 14, 2003 and October 30, 2003.  On
October 30, 2003 the Schultzes filed with the trial court a petition in
intervention seeking termination and adoption of H. B. N. S.  After the
hearing, the trial court dismissed the Schultzes= two original
proceedings, Cause Numbers 03-CV-131574 and 03-CV131571, but found the
Schultzes had standing to intervene in the Boltons= adoption suit to
seek managing conservatorship of H. B. N. S.  On November 25, 2003, the trial
court entered an interim order terminating the parental rights of H. B. N. S.=s birth parents.

On November 19, 2004, the Schultzes filed an Intervenors= Amended Petition
and Original Answer in which they asked the trial court to (1) finalize its
interim order terminating the parental rights of H. B. N. S.=s birth parents,
(2) deny the Boltons= request to adopt H. B. N. S., and (3)
name the Schultzes as the Sole Managing Conservators of H. B. N. S.   

Following another unsuccessful attempt by the Boltons to
have the Schultzes= intervention dismissed based on lack of
standing, trial of the Boltons= requested termination and adoption suit,
as well as the Schultzes= intervention, commenced on November 29,
2004.  On December 28, 2004, the trial court entered an Order In Suit Affecting
the Parent-Child Relationship in which it (1) confirmed the interim order
terminating the parental rights of  H. B. N. S.=s birth parents,
(2) denied the Bolton=s request to adopt H. B. N. S., and (3)
appointed the Schultzes as H. B. N. S.=s Sole Managing
Conservators and the Boltons as her Possessory Conservators. 

On April 7, 2005 the Schultzes filed suit for the adoption
of H. B. N. S.  At the time the Schultzes filed suit to adopt, H. B. N. S. had
lived continuously in the Schultzes= home for more
than three months.  Prior to the trial of the Schultzes= adoption suit,
the Boltons filed several motions.  A Motion to Deny Relief in Suit to Adopt
was contained in the Boltons= Original Answer.  In this motion, the
Boltons challenged the Schultzes= standing to file
a suit to adopt H. B. N. S.  The second motion filed by the Boltons was a
Motion to Abate or Stay the Case Pending Appellate Review of the trial court=s December 28,
2004 order.  Finally, the Boltons filed a Motion to Dismiss based upon the
legal theory of either res judicata or collateral estoppel.  The trial court
denied each of these motions and the adoption suit went to trial on November 9,
2005.








The only evidence from the adoption trial found in the
appellate record consists of  three reports filed by social workers Helen
Kerlick and Denise Fenwick.  These reports contained the social workers= findings that H.
B. N. S. appeared to be tightly bonded to the Schultz family and, based upon
their investigation, they highly recommended that the Schultzes be approved to
adopt H. B. N. S.  At the conclusion of the evidence, the Schultzes= request to adopt
H. B. N. S. was granted and the trial court signed a Decree of Adoption on
December 12, 2005.  As part of that decree, the trial court found that any
prior orders designating the Boltons as possessory conservators of H. B. N. S.
were no longer in her best interest and terminated all provisions granting the
Boltons possession and access to H. B. N. S.

The Boltons appealed the December 28, 2004 order in
appellate cause number 14-05-00410-CV.[2]
The Boltons appealed the December 12, 2005 order in appellate cause number
14-06-00102-CV.  We subsequently consolidated the Boltons= appeals.

Discussion








In appellate cause number 14-05-00410-CV, the Boltons challenge
the trial court=s handling of the Schultzes= intervention into
the Boltons= termination and adoption suit as well as the December
28, 2004 order defining the rights and duties of the individual conservators.[3] 
The Boltons also raise three issues in appellate cause number 14-06-00102-CV. 
In their second appeal, the Boltons initially argue the trial court erred when
it denied their motion to dismiss or abate the Schultzes= adoption suit
pending the outcome of their appeal in 14-05-00410-CV.  Next, the Boltons
contend the Schultzes did not have standing to adopt H. B. N. S.  Finally, the
Boltons assert the Schultzes are barred by res judicata and collateral estoppel
from adopting H. B. N. S.  We turn first to the Boltons= issues raised in
cause number 14-05-00410-CV.

I. Cause Number 14-05-00410-CV

A.      The
Boltons Lack Standing to Question Service on Other Parties.

 In their first issue, the Boltons challenge the trial court=s December 28,
2004 order based on the Boltons= view the Schultzes= intervention was
never perfected because they did not serve H. B. N. S.=s birth parents. 
However, the Boltons do not have standing to challenge the validity of service
on other parties to a suit.  See Southwest Const. Receivables, Ltd.
v. Regions Bank, 162 S.W.3d 859, 864 (Tex. App.CTexarkana 2005,
pet. denied) (AGenerally, only the entity that has not been properly
served has standing to challenge the lack of due process.@); see also
In re D. C., 128 S.W.3d 707, 713 (Tex. App.CFort Worth 2004,
no pet.) (holding mother did not have standing on appeal to raise issue
concerning service by publication on unknown biological father who did not
appeal).  As the Boltons do not have standing to challenge the validity of
service on H. B. N. S.=s birth parents, we overrule their first
issue, as well as their fourth and fifth questions.

B.      The
Schultzes Had Standing to Intervene in the Boltons= Pending
Termination and Adoption Suit

In their second issue, as well as questions one, two, and
three, the Boltons argue the trial court abused its discretion when it found
the Schultzes had standing to intervene in the Boltons= termination and
adoption suit.  We disagree.

 








1.       The
Standard of Review

In termination cases, the trial court enjoys discretion
when deciding a motion to strike an intervention.  In re A. M., 60
S.W.3d 166, 168 (Tex. App.CHouston [1st Dist.] 2001, no pet.).  To
constitute an abuse of discretion, the trial court=s decision must be
arbitrary or unreasonable.  Id.

2.       Standing
to Intervene is Measured at the Time the Intervention is Filed

Initially, in question number one, the Boltons contend the
date on which the Schultzes= standing to intervene must be judged is
not the date the Schultzes filed their intervention, but the date the Boltons
originally filed their suit.  In support of their contention, the Boltons cite In
re Garcia, 944 S.W.2d 725 (Tex. App.CAmarillo 1997, no
writ).  In Garcia, the father challenged the  standing of non-parents
who brought an original suit seeking custody of his child.  Id. at 726. 
The non-parents had asserted standing based on section 102.003(9) of the Texas
Family Code, which permitted an original suit by persons who had actual care,
custody, and control of a child for six months preceding the filing of the
suit.  Id.  The court in Garcia determined that the six-month
period, and therefore the issue of the non-parents= standing, was to
be determined as of the date the original suit was filed.  Id. at 727. 
The Boltons= reliance on Garcia is misplaced as Garcia
did not involve an intervention but the filing of an original lawsuit in which
standing was asserted based on an entirely different statute from the statute
at issue here.








In their petition in intervention, the Schultzes, because
of their substantial past contact with H. B. N. S., asserted they had standing
to intervene pursuant to section 102.004(b) of the Texas Family Code.  Under
that statute, the trial court had discretion to permit the Schultzes= intervention if
they could establish their substantial past contact with the child.  Tex. Fam. Code Ann. ' 102.004(b)
(Vernon 2002).  That determination is to be made at the point in time when the
Schultzes filed their petition in intervention.  See In re A. M., 60
S.W.3d at 169 (analyzing the intervenors= contacts with the
child as of the time they filed their petition in intervention).

The Boltons also challenge the evidence supporting the
trial court=s finding that the Schultzes had substantial past
contact with H. B. N. S. sufficient to allow them to intervene in the Boltons= original
termination and adoption suit.  The trial court conducted a two-day evidentiary
hearing to address the question of the Schultzes= standing to
intervene, among other issues.  The evidence introduced during this hearing
established that the Schultzes had a close relationship with H. B. N. S. that
commenced in the fall of 1998 and continued up through the time of the
evidentiary hearing.[4] 
The evidence also established that the Boltons initiated this relationship and
encouraged its continued development.  The evidence demonstrates that the trial
court acted within its discretion when it denied the Boltons= motion to dismiss
the Schultzes= intervention in the Boltons= termination and
adoption suit based on their substantive past contact with H. B. N. S.

3.       The
Requirements to Intervene Are More Relaxed Than The Requirements to File an
Original Suit

In questions two and three, the Boltons argue that since
the requirements to intervene in a termination and adoption suit are the same
as the requirements to institute an original suit and since the trial court
found that the Schultzes did not have standing to file their original lawsuits
regarding H. B. N. S., they cannot establish their standing to intervene in the
Boltons= termination and
adoption suit.  We disagree with each of the Boltons= contentions.








Initially, intervening and filing an original suit are
distinct legal actions.  In re A. M., 60 S.W.3d at 168.  Standing to
intervene in a suit and filing an original suit are not necessarily the same.  Id. 
Here, the Schultzes assert they had standing to intervene in the Boltons= original suit
based on their substantial past contact with H. B. N. S., as authorized by
section 102.004(b) of the Texas Family Code.  Tex.
Fam. Code Ann. ' 102.004(b).  In statutory standing cases,
such as this one, the analysis is a straight statutory construction of the
relevant statute to determine upon whom the Texas legislature conferred
standing and whether the claimant in question falls in that category.[5] 
In re Sullivan, 157 S.W.3d 911, 915 (Tex. App.CHouston [14th
Dist.] 2005, orig. proceeding).  As addressed above in section B(2), the
evidence demonstrated the Schultzes had substantial past contact with H. B. N.
S. and therefore the trial court did not abuse its discretion in finding the
Schultzes had standing, pursuant to section 102.004(b) of the Texas Family
Code, to intervene in the Boltons= termination and
adoption suit.

As the trial court did not abuse its discretion when it
denied the Boltons= motion to dismiss the Schultzes= intervention, we
overrule the Boltons= second issue, as well as their first,
second, and third questions.

 








C.      The Bolton=s Third Issue,
Arguing The Trial Court=s Final Order is
Invalid Because it Does Not Adequately Define the Rights and Duties of the
Managing and Possessory Conservators, is Moot

In their third issue, as well as their eighth question, the
Bolton=s contend the
trial court=s December 28, 2004 order improperly designated both
David and Deborah Schultz as sole managing conservators of H. B. N. S. 
However, since we affirm the trial court=s December 12,
2005 Decree of Adoption granting the Schultzes= request to adopt
H. B. N. S., this issue, challenging the trial court=s December 28,
2004 designation of both David and Deborah Schultz as sole managing conservator
of H. B. N. S., is moot.  Accordingly, we overrule the Boltons= third issue and
eighth question.

D.      The
Schultzes= Intervention Was Not Barred by The
Doctrines of Res Judicata and Collateral Estoppel

In their sixth question, the Boltons assert the Schultzes
were barred by the doctrines of res judicata and collateral estoppel from
intervening in the Boltons= termination and adoption lawsuit.  The
Boltons base their argument on the trial court=s dismissal, based
on lack of standing, of the Schultzes= Original Petition
for Termination and Adoption and Original Petition in Suit Affecting
Parent-Child Relationship.  We disagree.








Res judicata precludes re-litigation of claims that have
been finally adjudicated, or that arise out of the same subject matter and
could have been litigated in a prior action.  Shirvanian v. Defrates,
161 S.W.3d 102, 111 (Tex. App.CHouston [14th Dist.] 2004, pet. denied). 
Res judicata requires proof of the following elements: (1) a prior final
judgment on the merits by a court of competent jurisdiction; (2) identity of
the parties or those in privity with them; and (3) a second action based on the
same claims as were raised or could have been raised in the first action.  Id. 
A prior final judgment on the merits is lacking here.  A decision concerning
whether a party has standing is not a decision deciding the merits of a case.  In
re C. M. C., 192 S.W.3d 866, 869B70 (Tex. App.CTexarkana 2006, no
pet.).  Dismissal, as happened here to the Schultzes= two original
lawsuits, is the appropriate disposition when a party lacks standing; it is not
a decision on the merits.  Id. at 870.  As there was no final
disposition on the merits of the Schultzes= original
lawsuits, they are not barred by the doctrine of res judicata from intervening
in the Boltons= termination and adoption lawsuit.

The doctrine of collateral estoppel is used to prevent a
party from re-litigating an issue that it previously litigated and lost.  James
v. City of Houston, 138 S.W.3d 433, 437 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  To successfully invoke collateral estoppel, a party
must establish the following elements: (1) the facts sought to be litigated in
the second action were fully and fairly litigated in the first action; (2)
those facts were essential to the judgment in the first action; and (3) the
parties were cast as adversaries in the first action.  Id.  Here, there
was no full and fair litigation of the facts sought to be litigated in the
second action (the Schultzes= intervention in the Boltons= termination and
adoption suit) in the first action (the Schultzes= two original
lawsuits).  In the first action, the issue litigated was the Schultzes= standing to file
two original lawsuits.  In the second action, the issue litigated was the
Schultzes= standing to intervene in a lawsuit already filed pursuant
to section 102.004(b) of the Texas Family Code.  Tex. Fam. Code Ann. ' 102.004(b). As
addressed above in section B(3), the standing requirements to file an original
lawsuit and the requirements to intervene in an existing lawsuit are not the
same.   Because there was no prior full and fair litigation of the facts sought
to be litigated in the second action, the doctrine of collateral estoppel does
not apply.  We overrule the Boltons= sixth question.

E.      The
Boltons= Constitutional Rights Were Not Violated
by the Trial Court=s Appointment of the Schultzes as
Sole Managing Conservator of H. B. N. S.








In their seventh question, the Boltons contend the trial
court=s finding,
pursuant to section 153.374(b) of the Texas Family Code, that Christina Smith=s designation of
the Boltons as H. B. N. S.=s managing conservators was against H. B.
N. S.=s best interest,
violates the Fourteenth Amendment to the United States Constitution and Article
I, Section 19 of the Texas Constitution as it does not recognize the
constitutionally protected presumption in favor of the birth parent=s choice.[6] 
In support of their argument, the Boltons cite the United States Supreme Court=s opinion in Troxel
v. Granville.  530 U. S. 57, 120 S.Ct. 2054, 147 L. Ed.2d 49 (2000).








The
Boltons misapply the Troxel case.  In Troxel, paternal
grandparents, following the death of their grandchildren=s father, filed suit, pursuant to a
Washington statute, to obtain increased court ordered visitation with their
grandchildren.  Id.,  530 U. S. at 60B61, 120 S.Ct. at
2057B58.  The mother believed the amount of
visitation sought by the grandparents was excessive.  Id.  The Supreme
Court held that the statute providing: (1) that any person may petition a court
for visitation at any time; and (2) that a court may order visitation rights
for any person when it finds visitation may be in the best interest of the
child; violated the substantive due process rights of the mother.  Id.,
530 U.S. at 67, 120 S.Ct. at 2060B61.  The Supreme Court held the statute
was unconstitutionally overbroad as it gave the state the power to order
visitation rights for a third party without any deference to a parent=s decision as to whether that
visitation would not be in the child=s best interest.  Id.  The
Supreme Court went on to state that the trial court=s order was not founded on any
special factors that might justify the State=s interference with the parent=s fundamental right to make decisions
concerning the rearing of her children.  Id., 530 U.S. at 68, 120 S.Ct.
at 2061.  The Supreme Court noted there was no allegation or finding that the
surviving parent was unfit.  Id.  Finally, the Supreme Court stated: Aso long as a parent adequately cares
for his or her children (i.e. is fit), there will normally be no reason
for the State to inject itself into the private realm of the family to further
question the ability of that parent to make the best decisions concerning the
rearing of that parent=s children.@  Id., 530 U.S. at 68B69, 120 S.Ct. at 2061.  Troxel
prohibits state interference with a parent=s fundamental right to make decisions
concerning the rearing of her children.  The Supreme Court=s decision in Troxel does not
extend such constitutional protection to the situation found here, where the
birth parent relinquishes her parental rights, designates a family as her
preference for adopting the child, and that family initiates a lawsuit to
terminate the birth parents= rights and adopt the child.  Because the birth parent
relinquished her rights, this case involves exactly those special factors the
Supreme Court noted were missing in Troxel, thus no improper state
interference occurred.








As
mandated by statute, the best interest of the child is the court=s primary consideration in
determining issues of conservatorship and access.  Tex. Fam. Code Ann. ' 153.002 (Vernon 2002). The United
States Supreme Court has expressly recognized that the best interest of the
child is a proper standard for resolving disputes between parents on custody
issues.  Reno v. Flores, 507 U. S. 292, 303B04, 113 S.Ct. 1439, 1448,123 L. Ed.2d
1 (1993).  While this is not a suit between parents, the trial court was still
statutorily charged with making a ruling that was in the best interest of the
child.  See Tex. Fam. Code Ann.
' 153.374(b).  In addition, Texas
courts have repeatedly recognized that the best interest of the child standard
does not violate federal or state constitutional principles.  In re J. R. D.,
169 S.W.3d 740, 744 (Tex. App.CAustin 2005, pet. denied) (holding best interest of the child
standard does not infringe father=s fundamental constitutional right to
parent his children); In re R. D. Y., 51 S.W.3d 314, 324 (Tex. App.CHouston [1st Dist.] 2001, pet.
denied) (mother was not denied due process of law or equal protection of law
based on the court=s finding that the child=s best interest weighed against the
mother receiving overnight visitation with child); In re H. D. O., 580
S.W.2d 421, 424 (Tex. App.CEastland 1979, no writ) (holding best interest of the child
standard does not violate the due process clause or the equal protection clause
of the Fourteenth Amendment and does not violate Article I, Section 19 of the
Texas Constitution).  As the best interest of the child standard does not
violate federal or state constitutional protections, we overrule the Boltons= seventh question.


II. Cause Number 14-06-00102-CV

A.      The Trial
Court Did Not Abuse Its Discretion When it Denied the Boltons= Motion to Dismiss
or Abate the Schultzes= Adoption Lawsuit

On April 7, 2005 the Schultzes filed an Original Petition
for Adoption.  Soon thereafter, the Boltons filed two identical motions to
dismiss or abate the adoption lawsuit pending the outcome of their appeal of
the trial court=s previous Termination and Custody Order. 
The trial court denied those motions.  In their first issue in this appeal from
the trial court=s adoption decree, the Boltons claim the
trial court erred when it denied their motions to dismiss or abate as this
court had jurisdiction over the parties and subject matter of the order of
termination.  We disagree.








An appeal from a final order rendered in a suit affecting
the parent-child relationship, when allowed by law, shall be as in other civil
cases.  See Tex. Fam. Code Ann.
' 109.002(a).  An
appeal from a final order, with or without a supercedeas bond, does not suspend
the final order unless the trial court rendering the final order, orders the
suspension.  Id. ' 109.002(c); see also Tex. R. App. P. 24.2(a)(4).  We review
a trial court=s decision under an abuse of discretion standard.  In
re S. A., No 14-98-00586-CV, 1999 WL 397890, at * 4 (Tex. App.CHouston [14th
Dist.] June 10, 1999, no pet.) (not designated for publication); Wright v.
Wright, 867 S.W.2d 807, 817 (Tex. App.CEl Paso 1993, writ
denied); Morris v. Morris, 654 S.W.2d 789, 790B91 (Tex. App.CTyler 1983, no
writ).  A trial court abuses its discretion if its decision is arbitrary,
unreasonable, and without reference to any guiding rules and principles.  In
re E. L. T., 93 S.W.3d 372, 375 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).

The entire record on appeal relevant to this issue consists
exclusively of the two identical motions filed by the Boltons.  No evidence is
attached to the Boltons= motions.  The only argument raised by the
Boltons in their motions repeats of their argument the Schultzes did not have
standing to intervene in the Boltons= termination and
adoption lawsuit. Based on this record, we cannot conclude the trial court
abused its discretion when it denied the Boltons= motions.  We
overrule the Boltons= first issue.

B.      The
Schultzes Had Standing to Initiate a Suit to Adopt H. B. N. S.

In their second issue in this appeal, the Boltons contend
the trial court did not have subject matter jurisdiction because the Schultzes
did not have standing to adopt H. B. N. S. We once again disagree.

Subject matter jurisdiction is essential to the authority
of a court to decide a case.  Tex. Ass=n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993).  Standing is implicit 
in the concept of subject-matter jurisdiction.  M. D. Anderson Cancer Ctr.
v. Novak, 52 S.W.3d 704, 708 (Tex. 2001).  Standing focuses on who may
bring an action.  Waco Indep.  Sch. Dist. v. Gibson, 22 S.W.3d 849, 851
(Tex. 2000). Standing may be predicated on either statutory or common law
authority.  Everett v. TK-Taito, L.L.C., 178 S.W.3d 844, 850 (Tex. App.CFort Worth 2005,
no pet.).  A party=s standing to pursue and maintain a cause
of action is a question of law.  Coons-Andersen v. Andersen, 104 S.W.3d
630, 634 (Tex. App.CDallas 2003, no pet.).  We review the
question of standing de novo.  Id.  In our review, we take the factual
allegations in the petition as true and construe them in favor of the pleader. 
Tex. Ass=n of Bus., 852 S.W.2d at
446.  In addition to the pleadings, we may also consider relevant evidence and
must do so when necessary to resolve the jurisdictional issues raised.  Bland
Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000).








In their petition, the Schultzes asserted they had standing
to adopt H. B. N. S. pursuant to section 102.005(3) of the Texas Family Code. 
This section provides that an adult who has had actual possession and control
of the child for not less than two months during the three-month period
proceeding the filing of the petition, has standing to request adoption.  Tex. Fam. Code Ann. ' 102.005(3)
(Vernon 2002).  Within their petition, the Schultzes stated they would have had
possession of H. B. N. S. for at least six months by the time the trial court
heard their request to adopt.  There is no reporter=s record in this
appeal.  However, the clerk=s record contains the following reports:
(1) Prescreening Adoptive Home Study; (2) Post Placement Report to the Court;
and (3) the Updated Post Placement Report to the Court. Helen Kerlick and
Denise Fenwick, the social workers handling the adoption, signed these
reports.  Each of these reports establishes that H. B. N. S. has resided in the
Schultzes= home since December 2004.  The suit for adoption was
filed on April 7, 2005.  As H. B. N. S. had resided with the Schultzes for at
least two months in the three months prior to the filing of the adoption suit,
the Schultzes had standing to adopt H. B. N. S.  See id.  We overrule
the Boltons= second issue in this appeal.

C.      The
Schultzes= Suit to Adopt H. B. N. S. Is Not
Barred by Res Judicata or Collateral Estoppel

In their third and final issue in this appeal, the Boltons
argue the Schultzes= April 2005 suit to adopt H. B. N. S. is
barred by either res judicata or collateral estoppel.  Neither doctrine bars
the Schultzes= suit.








As explained above in section D of part I of this opinion,
res judicata precludes re-litigation of claims that have been finally
adjudicated or that arise out of the same subject matter and could have been
litigated in a prior action.  Shirvanian, 161 S.W.3d at 111.  One of the
elements of res judicata is proof of a prior final judgment on the merits by a
court of competent jurisdiction.  Id.  A prior final judgment on the
merits is lacking here.  A decision concerning whether a party has standing is
not a decision deciding the merits of a case.  In re C. M. C., 192
S.W.3d at 870.  Dismissal, as happened here to the Schultzes= original adoption
lawsuit, Cause No. 03BCVB131572, is the
appropriate disposition when a party lacks standing.  Id.  A dismissal
based on lack of standing is not a decision on the merits.  Id.  As
there was no final judgment on the merits of the Schultzes= original adoption
lawsuit, they were not barred by the doctrine of res judicata from filing their
April 2005 suit seeking to adopt H. B. N. S.

As previously discussed, the doctrine of collateral
estoppel is used to prevent a party from re-litigating an issue that it
previously litigated and lost.  James, 138 S.W.3d at 437.  To
successfully invoke collateral estoppel, the first element a party must
establish is that the facts sought to be litigated in the second action were
fully and fairly litigated in the first action.  Id.  The Boltons= collateral
estoppel argument fails because the facts sought to be litigated in the
Schulzes= April 2005 adoption
suit are not the same facts litigated in the Schultzes= original adoption
suit filed in August 2003.  In the first adoption suit, the issue litigated was
the Schultzes= standing to initiate a suit to adopt H. B. N. S. in
August 2003, while in the second adoption suit, the issue litigated was the
Schultzes= standing to initiate a suit to adopt H. B. N. S. in
April 2005.[7] 
As the Boltons conceded during oral argument, a party=s standing can
change over time, thus, there was no prior full and fair litigation of the
facts supporting the Schultzes= standing to initiate the April 2005
adoption suit and the doctrine of collateral estoppel does not apply.  As
neither res judicata nor collateral estoppel bar the Schultzes= April 2005
adoption suit, we overrule the Boltons= third issue.

 








Conclusion

Having overruled all of the Boltons= issues and questions in both
appeals, we affirm the trial court=s December 28, 2004 Order in Suit Affecting the
Parent-Child Relationship and December 12, 2005 Decree of Adoption.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

Judgment rendered
and Memorandum Opinion filed July 17, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.









[1]  Dwight Bolton has prior convictions for unlawful
carrying of a weapon (December 5, 1983); possession of marijuana with the
intent to sell (November 27, 1991); and for retaliation (May 21, 1992).  During
the course of the litigation, Mr. Bolton admitted to having physical
confrontations with Paula Bolton=s
teenaged sons, the most serious of which involved Mr. Bolton picking Paula
Bolton=s thirteen year old son up by the neck and pinning him
to the wall with his feet barely touching the floor.  Mr. Bolton also testified
he believed this was an appropriate method to deal with a thirteen year old
boy. Mr. Bolton also admitted to an incident where he assaulted a husband and
wife following an automobile accident.  Finally, Mr. Bolton admitted that he is
angry all the time and it is possible that, when he is angry, be becomes
assaultive.  Mr. Bolton=s Veterans=
Administration medical records from July 2003, reveal that he used marijuana
daily, had problems with chronic anger, and tried to choke Paula Bolton on
three separate occasions.

Paula Bolton went to prison when she was eighteen for violating the
provisions of her probation following her March 1981 conviction for possession
of a controlled substance.  Ms. Bolton admitted she pled guilty to a charge of
aggravated solicitation of prostitution.  In July 2004, Ms. Bolton was
convicted of theft. 





[2]  While the Boltons have appealed the trial court=s December 28, 2004 order, they
have not raised any issues on appeal contesting the trial court=s denial of their request to adopt
H. B. N. S.  Instead, the Boltons have addressed their appeal exclusively at
the trial court=s handling of the Schultzes= intervention and its division of
responsibilities in the December 28, 2004 final order.





[3]  In their appellants= brief in cause number 14-05-00410-CV, the Boltons raise three issues. 
In addition, in the argument and authorities section of their brief, the
Boltons pose eight questions, some of which are related to one of the original
three issues, while two raise entirely new points not found in the original
issues.  Where the Boltons= issues and
questions intersect, we address them together.  Accordingly, under the Boltons= first issue, we also address their fourth and fifth
questions.  Within the Boltons= second issue,
we address their first, second, and third questions.  We handle the Boltons= third issue together with their eighth question. 
Finally, we address the Boltons= sixth and
seventh questions separately.    





[4]  This evidence includes (1) testimony that the
Schultzes provided ongoing care for H. B. N. S. in their home for extensive and
repeated periods of time beginning in the fall of 1998 and have treated her as
a member of their family; (2) H. B. N. S. accompanied the Schultzes on numerous
family vacations; (3) H. B. N. S. participated in Schultz family celebrations
of birthdays and holidays; (4) H. B. N. S. had her own rooms at the Schultzes= home and lake house; and (5) the Schultzes took H. B.
N. S. to school, were on the list of people authorized to pick her up from
school, and even met with H. B. N. S.=s
teachers regarding her education.





[5]  The Boltons=
citation to Mendez v. Brewer, 626 S.W.2d 498 (Tex. 1982), and Guaranty
Fed. Sav. Bank v. Horseshoe Oper. Co., 793 S.W.2d 652 (Tex. 1990), do not
change this result.  In Mendez, the Texas Supreme Court, construing
section 11.03 of the Texas Family Code, the predecessor to the current section
102.004, held that foster parents had no justiciable interest and therefore no
standing to intervene in a termination suit.  Mendez, 626 S.W.2d at
500.  However, the Mendez case was decided before section 11.03 of the
Texas Family Code was amended to permit a person with substantial past contact
with a child, such as the Schultzes, to bring a termination and adoption suit
and therefore has no precedential value here.  Rodarte v. Cox, 828
S.W.2d 65, 70 (Tex. App.CTyler 1991, writ den.).  Guaranty addresses
common law intervention pursuant to Rule 60 of the Texas Rules of Civil
Procedure and is not applicable to this case.  Guaranty, 793 S.W.2d at
657.





[6]  To the extent question seven can be construed as
arguing the trial court=s decision violated any federal and state
constitutional protections the Boltons are entitled to as Aparents@ of
H. B. N. S., that argument is based on a false premise.  The Boltons are not
parents as defined by the Texas Family Code.  A parent is defined as a child=s mother, presumed father, legally determined father,
adjudicated father, acknowledged father, or adopted mother or father.  Tex. Fam. Code Ann. ' 101.024(a) (Vernon Supp. 2006).  The Boltons do not
fall into any of these categories and therefore are not entitled to the constitutional
protections afforded parents.  In addition, to the extent question seven can be
interpreted as seeking to assert any constitutional protections guaranteed
Christina Smith, the Boltons do not have standing to assert rights she herself
has chosen not to pursue.  See In re D. C., 128 S.W.3d 707, 713 (Tex.
App.CFort Worth  2004, no pet.) (holding mother had no
standing on appeal to raise issue concerning service of process on unknown
biological father who did not appeal).





[7]  In the August 2003 suit, the Schultzes alleged they
had standing to adopt H.B.N.S. under section 102.005(4) of the Texas Family
Code.  See Tex. Fam. Code Ann. ' 102.005 (4) of the Texas Family Code.  See Tex. Fam. Code Ann. ' 102.005 (4) (standing based on substantial past
contact with the child).  In April 2005, the Schultzes based their standing to
adopt H.B.N.S. on section 102.005(3) of the Texas Family Code.   See id. 
(Standing based on actual possession and control of the child for not less than
two months during the three month period preceding the filing of the petition).