**SOUTHWEST CONSTRUCTION RECEIVABLES, LIMITED, et al., Appellants,**

**v.**

**REGIONS BANK, f/k/a First Commerce Bank, et al., Appellees.**

No. 06–03–00083–CV.

Court of Appeals of Texas, Texarkana.

Submitted Feb. 16, 2005.

Decided April 26, 2005.

John R. Mercy, Mercy, Carter, Tidwell, LLP, Texarkana, Graham Kerin Blair, David A. Brakebill, Baker & McKenzie, Houston, for appellants.

George L. McWilliams, Sean F. Rommel, Phillip N. Cockrell, Patton, Haltom, Roberts, Texarkana, William A. Waddell Jr., William H. Sutton, Friday, Eldredge & Clark, Little Rock, AR, for Regions Bank.

Stephen L. Gershner, Davidson Law Firm, Little Rock, AR, Gary D. Grimes, Law Office of Gary D. Grimes, Texarkana, for Charles William Richardson.

Ronald J. Burke, pro se.

Before ROSS, CARTER, and CORNELIUS,* JJ.

## OPINION

Opinion by Justice ROSS.

Dan Moore, D.D.S., and Dennis O'Banion, M.D., and their two companies, Southwest Construction Receivables, Limited (SCR) and Construction Invoice Funding, Ltd. (collectively, Appellants) sued Re-

* William J. Cornelius, C.J., Retired, Sitting by Assignment.

gions Bank and several individuals, including Charles William Richardson, for fraud, breach of contract, and civil conspiracy. Some of the defendants, including Regions and Richardson, filed motions for partial, traditional, and no-evidence summary judgment, which the trial court ultimately granted. The trial court also ruled that, as a matter of law, one of the individual defendants, Michael McNew, had not been properly served and was, therefore, not before the court. The plaintiffs nonsuited much of the remainder of their case and appealed those rulings by the trial court.

In their third issue, Appellants contend the trial court erred by ruling, as a matter of law, that McNew had not been served with the plaintiffs' original or amended petitions and was, therefore, not properly before the trial court. We hold the trial court did so err. Because we conclude McNew is a party to this case, and because claims against him have not been resolved by way of a final judgment, the appeal is now interlocutory, and we lack jurisdiction to consider the remainder of Appellants' points of error. Accordingly, we sustain Appellants' third point of error and dismiss the remainder of the appeal for want of jurisdiction.

## I. Procedural and Factual History

In the late 1990s, Drs. Moore and O'Banion of Texarkana were introduced to the "factoring" business by McNew and Joe O'Banion (Dr. O'Banion's brother). "Factoring" is the business of "buying of accounts receivable at a discount. The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." BLACK'S LAW DICTIONARY 630 (8th ed.2004). In this case, Drs. Moore and O'Banion purchased accounts receivable from construction subcontractors that were owed money by their respective general contractors.

In 1997, Drs. Moore and O'Banion created SCR. The doctors borrowed money from First Commercial National Bank to fund their new company. The doctors worked with Joe O'Banion and McNew, who brokered accounts receivable to the doctors and SCR. Working through a company owned by McNew and Joe O'Banion called Funding Sources Support, Inc. (FSSI), McNew was supposed to conduct a background check on each account receivable that he brokered (a process the parties refer to as "due diligence" processing) to ensure both that the work represented by each account receivable had, in fact, been completed by the subcontractor and that the money was due to be paid by the general contractor within ninety days. As a condition of loaning money to SCR, First Commercial National Bank also required of SCR that the bank be allowed to conduct its own due diligence check of each account receivable to be purchased, as required by banking regulations and the bank's internal policies. For a while, all the parties—Drs. Moore and O'Banion, First Commercial National Bank, McNew and Joe O'Banion, and the subcontractors—seemed to be making a profit.

In July 1998, Regions Bank of Little Rock, Arkansas, acquired First Commercial National Bank. Shortly before then, McNew had encouraged the doctors to purchase, through SCR, a number of additional accounts receivable from Starkey Electric, an electrical subcontractor based in Tyler, Texas. McNew had also encouraged another investor, Richardson—who was the owner of Southwest Financial Funding (SWF) and a Regions customer— to increase SWF's factoring investment in Starkey Electric and other companies McNew had suggested.

In August 1998, SWF applied to have its credit line increased by Regions. Regions assembled a team of executives from various branch offices to review SWF's application. One of those executives was Neil West, an official with a Regions branch in Tyler, Texas. In reviewing SWF's application, West noticed that SWF planned to buy several accounts receivable from Starkey Electric of Tyler. This concerned West because he had experienced problems with Starkey Electric when West had worked for another bank in the Tyler area.

On August 30, 1998, West apprised others within Regions of his suspicions, stating he believed Starkey—and possibly others—were engaging in fraud by trying to sell "bogus" accounts receivable to SWF. West outlined several accounts receivable that SWF's credit extension application proposed buying from Starkey Electric. West's written memorandum about the Starkey invoices then detailed why West believed certain of those invoices were fraudulent: the invoices were for work that was either not fully completed or had not yet commenced. West then concluded that, because SWF was already heavily invested in Starkey invoices, and because the value of those invoices already owned by SWF was likely to be less than the money SWF ultimately realized in payments from the general contractors, further funding by Regions of SWF's investments in Starkey Electric was not in the bank's best interest. "[A]t this point every advance we [Regions] make, particularly with Starkey as the beneficiary, widens the gap by increasing the loss exposure." "SWF is a house of cards ready to collapse without substantial capital input—maybe the entire $3.7MM [sic] Starkey owes plus any other scams that we [Regions] don't know about."

On September 4, 1998, McNew met with Regions officials and admitted that some of the Starkey invoices—for which Regions had already advanced money to Richardson (and SWF) and which Richardson had, in turn, paid to Starkey—were for work that had not yet been completed. McNew and bank officials identified approximately $695,000.00 worth of problem invoices. Regions then demanded it be paid by McNew for those identified, problem invoices within a short period of time.

Shortly thereafter, McNew obtained money from other sources. These sources were Drs. Moore and O'Banion, and SCR. Drs. Moore and O'Banion borrowed money and deposited that money into SCR's checking account, to which McNew had access. McNew then took $495,000.00 of SCR's money, added $200,000.00 of his own money, and paid $695,000.00 to Regions for the identified, problem invoices from Starkey Electric. This payment, made in response to Regions' demand, absolved Regions' potential losses associated with the previously identified $695,000.00 worth of problem invoices from Starkey Electric.

McNew was ultimately convicted on federal charges of wire fraud, bank fraud, making a false statement to a financial institution, mail fraud, and conspiracy. At the federal plea, McNew admitted he led Drs. Moore and O'Banion to believe they were buying new invoices when, in fact, he knew that representation was not true. Instead, McNew used the $495,000.00 from the doctors to repurchase the problem invoices from SWF—invoices McNew and Regions both knew were for work that had not been completed or that they suspected to be fraudulent.

On November 18, 1998, Regions executed a "Release of Security Interest" in these Starkey Electric invoices that Regions had reason to believe had either been paid in full or were fraudulent. Regions and FSSI also mutually released

each other from any claims relating to certain Starkey Electric invoices; Regions promised not to disclose any of FSSI's activities to law enforcement, except where required by law.

## II. Did the Trial Court Err By Striking McNew As a Party to the Lawsuit?

In their third point of error, Appellants contend the trial court erred by holding, as a matter of law, McNew had not been properly served with either the plaintiffs' original petition or any amended petition. In the spring of 2003, Richardson asked the trial court to find that McNew had not been properly served with the plaintiffs' original petition. The trial court ruled May 13, 2003, that McNew was not properly before the court; it followed with a written order June 27, 2003, which stated there had been "no service on Michael L. McNew that validly makes him a party to this case." The effect of the trial court's order was to eliminate McNew as a party to the case. This ruling hurt the plaintiffs' case because McNew, the alleged primary malfeasant (and now federally convicted criminal), was a necessary party to prove the plaintiffs' claims of conspiracy against the remaining defendants. *See, e.g., Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex.1998) (element of civil conspiracy is combination of two or more persons).[1]

■ Generally, only the entity that has not been properly served has standing to challenge the lack of due process. *See, e.g., Illinois v. DeLaire*, 240 Ill.App.3d 1012, 183 Ill.Dec. 33, 610 N.E.2d 1277, 1287–88 (1993) (third party has right to contest effectiveness of service, but not defendants). One exception to that general principle is that an insurance company may challenge the propriety of service as to the company's insured. *See, e.g., Koven*

*v. Saberdyne Sys., Inc.*, 128 Ariz. 318, 625 P.2d 907, 909–10 (Ct.App.1980) (insurance company had standing to move trial court to set aside default judgment against insured based on lack of service of plaintiff's petition for personal injuries occurring at amusement park).

■ With the single exception of an insurance company standing in the shoes of its insured, we have found nothing in our statutes or Texas caselaw that supports Richardson's position that a defendant in a civil suit has standing to challenge whether a codefendant has been properly served; nor have the parties directed this Court's attention to any such authority. Therefore, we conclude Appellants are correct: only McNew has standing to challenge whether he has or has not been properly served. *Cf. Caldwell v. Barnes*, 154 S.W.3d 93, 97–98 (Tex.2004) (burden is on nonserved party to prove nonservice in post-judgment bill of review proceeding). The remaining codefendants have no such standing. Because the trial court struck McNew as a party on the motion of a codefendant, the trial court erred.

■ Moreover, the record before us shows Appellants served the Texas Secretary of State (as the agent of process for McNew, an Arkansas resident) with the original petition.

(a) The secretary of state is an agent for service of process or complaint on a nonresident who:

> (1) is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process;

> . . . .

which the defendants' alleged conspiracy resulted in Appellants' damages.

---

1. The plaintiffs had crafted their case so as to depict McNew as the critical link through

(b) The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

TEX. CIV. PRAC. & REM.CODE ANN. § 17.044 (Vernon 1997) (Texas' "long-arm" statute). If service is effected via the Secretary of State pursuant to Texas' long-arm statute, absent evidence of fraud or mistake, the Secretary of State's certificate of service "*conclusively*" establishes that process was served." *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex.2004) (citing *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex.1986)); *Zuyus v. No'Mis Communications, Inc.*, 930 S.W.2d 743, 746 (Tex.App.-Corpus Christi 1996, no writ).

In this case, the Texas Secretary of State accepted service of process, as the agent for nonresident McNew, of the plaintiffs' original petition. The Secretary of State then forwarded that notice to McNew's last known address in Arkansas. The plaintiffs had similarly served FSSI, an Arkansas corporation owned by McNew, via the Texas Secretary of State. The record shows McNew's last known address and FSSI's last known address are the same location. The Secretary of State's certification of service shows the certified letter to McNew went "unclaimed" and was returned to the Secretary August 20, 1999, but the certified letter to FSSI was accepted and the return receipt was received by the Secretary August 20, 1999. Appellants contend this constitutes "selective acceptance" by McNew. We tend to agree.[2] However, such conclusion is not necessary in light of the Texas Supreme Court's holding in *Campus Investments*.

■ Regions and Richardson point out that Appellants amended their original petition multiple times, adding plaintiffs (Drs. Moore and O'Banion), new claims, and new damages. Citing *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex.1978), they contend that, because McNew had not made an appearance in the case at the time of these amendments, Appellants were required to have a new citation issued on their "live" pleading and served on McNew. Appellants' "live" pleading at the time the trial court struck McNew as a party was Plaintiffs' fifth amended original petition, filed December 13, 2001.

■ A plaintiff who amends its petition may serve the defendant, without regard to whether the amendment seeks a more onerous judgment or adds a new cause of action, by complying with the filing and serving requirements of Rules 21 and 21a, Texas Rules of Civil Procedure.[3] *In re*

---

**2.** *See Gonzales v. Surplus Ins. Servs.*, 863 S.W.2d 96, 102 (Tex.App.-Beaumont 1993, writ denied), *overruled in part on other grounds, Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682 (Tex.2002), where the Beaumont court held:

where it is shown ... that a party has fully complied with the notice requirements set forth in TEX. R. CIV. P. 21a ... yet fails to establish actual receipt of notice upon opposing party or counsel, such notice shall be sufficient constructive notice where it is

shown that the intended recipient engaged in instances of selective acceptance/refusal of certified mail relating to the case.

**3.** Rule 21 provides, in relevant part:

Every pleading, plea, motion or application to the court for an order, whether in the form of a motion, plea or other form of request, unless presented during a hearing or trial, shall be filed with the clerk of the court in writing, shall state the grounds therefor, shall set forth the relief or order

*R.D.C.,* 912 S.W.2d 854 (Tex.App.-Eastland 1995, no writ). The record before us shows that Appellants served McNew with Plaintiffs' fifth amended original petition by certified mail May 5, 2003.

As the Eastland court pointed out in *R.D.C., Weaver* was a liability insurance coverage case holding that the insurance company had no duty to defend a suit against the named insured's employee where the employee failed to comply with the policy provisions regarding the forwarding of citation to the insurer. The Eastland court went on to state:

> While the rule [that new citation is necessary for a party who has not appeared when the plaintiff, by amended petition, seeks a more onerous judgment than prayed for in the original pleading] was discussed in *Weaver,* it is apparent that the thrust of the opinion is directed at the failure of the "omnibus insured" to comply with the policy provisions.

*Id.* at 855.

■ Citing *Baker v. Monsanto Co.,* 111 S.W.3d 158 (Tex.2003), Regions and Richardson further contend that, because Drs. Moore and O'Banion were not added as plaintiffs in the case until Plaintiffs' second amended original petition, filed February 2, 2001, these doctors were "intervenors" and were therefore required to serve McNew with a new citation. In *Baker,* the defendant, Monsanto Co., had not been served with citation by any plaintiff when the intervenors attempted to serve Mon-

santo's counsel. *Id.* at 159. The law firm representing Monsanto expressly stated in a letter that they would not accept service on Monsanto's behalf. Plaintiffs subsequently served citation on Monsanto. Monsanto's counsel filed an answer, but only to "the petitions of those plaintiffs who have served Monsanto." *Id.* The Texas Supreme Court held that Monsanto's subsequent appearance relieved the intervenors of serving Monsanto with a new citation. In so holding, the Texas Supreme Court quoted approvingly:

> Citation is necessary when the intervenor asks affirmative relief against a defendant who has not appeared or a plaintiff who does not, *by any action subsequent to the intervention,* appear thereon.... 1 McDonald and Carlson, Texas Civil Practice § 5:81 at 609 (1992 ed.).

*Id.* at 160 (emphasis added).

■ It is apparent the "by any action subsequent to the intervention" language is directed toward plaintiffs because plaintiffs will always have already made an appearance in the case. This language is equally applicable, however, to defendants who, like McNew, have been previously served with citation but have not entered a formal appearance in the case. Such defendants may, "by [their] action subsequent to the intervention," make issuance of a new citation unnecessary. Such was the case with McNew.

---

sought, and at the same time a true copy shall be served on all other parties, and shall be noted on the docket.

Tex.R. Civ. P. 21.

Rule 21a provides, in relevant part:

> Every notice required by these rules, and every pleading, plea, motion, or other form of request required to be served under Rule 21, other than the citation to be served upon the filing of a cause of action and except as otherwise expressly provided in

these rules, may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record, as the case may be, either in person or by agent or by courier receipted delivery or by certified or registered mail, to the party's last known address ... or by such other manner as the court in its discretion may direct.

Tex.R. Civ. P. 21a.

Unlike Monsanto in *Baker*, where Monsanto unsuccessfully sought to invoke the statute of limitations because it had not been formally served with citation by the intervenors, the record before us shows that McNew never denied his status as a defendant in this case. After Drs. Moore and O'Banion were joined as plaintiffs, McNew appeared "at the instance of the plaintiffs" and gave testimony in the form of an oral deposition. Richardson's motion for summary judgment included an attached excerpt that shows McNew was questioned in that deposition concerning the claims of Drs. Moore and O'Banion.

Further, McNew participated in a full evidentiary hearing in U.S. Bankruptcy Court on Appellants' motion for relief from stay to allow the trial of the instant case to proceed based on Plaintiffs' fifth amended original petition. The bankruptcy court's order, dated July 1, 2002, granting this motion, reflects that McNew opposed the motion on various grounds, but lack of service was not one of them. Rather, the order reflects that McNew admitted and pled guilty to the specific conduct complained of in Plaintiffs' fifth amended original petition. Referring to the instant litigation, the order also contains the following judicial finding:

> [McNew] has been aware of the litigation and the complaints against him for several years, and due to his guilty plea in the criminal case and admissions in his civil deposition, it does not appear that [McNew] has a viable defense in any case.

Based on these actions by McNew after Drs. Moore and O'Banion were joined as plaintiffs, and based on the original service of citation properly served on him by the Secretary of State, we hold that a new

citation was not required and that notice of the additional plaintiffs' claims, given pursuant to Rules 21 and 21a, was sufficient.[4]

Therefore, even if the trial court had authority to strike McNew as a party based on the motion of a codefendant, the trial court nonetheless erred because the record affirmatively refutes the claims of Regions and Richardson that McNew had not been made a party to the suit. We sustain Appellants' third point of error.

## III. The Appeal Is Now Interlocutory

■ In their fifth amended petition, the plaintiffs sued Regions Bank, McNew, Michael Starkey (owner of Starkey Electric), Richardson, J. Ronald Burke (Richardson's business partner), and Joe O'Banion. The plaintiffs alleged the defendants were collectively and separately guilty of fraud, aiding and abetting a breach of fiduciary duty, and civil conspiracy. The plaintiffs sought actual and punitive damages, as well as court costs and pre- and post-judgment interest.

In their notice of partial nonsuit, the plaintiffs took a nonsuit with respect only to their claims of direct fraud ("save and except those claims already adjudicated by partial summary judgment") and their claims of aiding and abetting a breach of fiduciary duty against Regions, Richardson, and a third defendant ("save and except those claims already adjudicated by partial summary judgment"). The notice of partial nonsuit did not address Appellants' claims against NcNew.

■ "[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex.2001). "A judgment

---

4. Plaintiffs did ultimately cause a new citation, with their fifth amended original petition, to be served on McNew by the Secretary of State. The return on this citation, however, was not filed until after the trial court had struck McNew as a party.

is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree." *Id.* Except for those statutory exceptions, if the judgment from which the party has appealed does not dispose of all pending parties and claims, then the judgment is deemed to be "interlocutory" and the court of appeals should either abate the case or dismiss it for want of jurisdiction. *Id.* at 195–96.

Because we have held the trial court erred by ruling, as a matter of law, that McNew was not a proper party to the suit, and because Appellants' notice of nonsuit did not resolve their claims against McNew, the trial court's award of summary judgment in this case does not dispose of all the parties or claims. None of the statutory exceptions that grant us jurisdiction to hear certain interlocutory appeals are applicable to this case. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014 (Vernon Supp.2004–2005). Therefore, we are without jurisdiction to consider Appellants' remaining points of error. *Cf. Brooks v. Pep Boys Auto. Supercenters,* 104 S.W.3d 656, 660–61 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (order compelling arbitration not final disposition and not expressly authorized for interlocutory appeal; appellate court dismissed appeal).

## IV. Conclusion

For the reasons stated, we sustain Appellants' third point of error and dismiss the appeal for want of jurisdiction.