COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| MAP RESOURCES, INC., PECOS BEND ROYALTIES, LLLP, PBR PROPERTIES JOINT VENTURE, and TOMMY VASCOCU, | § § § § | No. 08-24-00088-CV Appeal from the 143rd Judicial District Court |
| Appellants, | § | of Reeves County, Texas |
| v. | § | (TC# 15-06-21057-CVR) |
| STEPHEN L. MITCHELL, JANIE MITCHELL BELEW, LISA MITCHELL SEIGMANN, and LINDA MITCHELL STAPLETON, | § § | |
| Appellees. | § | |

**O P I N I O N**

This is the second round of appeals in this case.[1] The underlying suit involves a dispute over who owns certain mineral interests in Reeves County. On the one hand, Appellees Stephen L. Mitchell, Janie Mitchell Belew, Lisa Mitchell Seigmann, and Linda Mitchell Stapleton (collectively, the Mitchells) claim they own the mineral interests, having inherited them from their mother, Elizabeth S. Mitchell (Ms. Mitchell), who died in 2009. On the other hand, Appellants Map Resources, Inc., Pecos Bend Royalties, LLLP, PBR Properties Joint Venture, and Tommy Vascocu (collectively, Map) claim to own the mineral interests, having acquired them at or in

---

[1] The Texas Supreme Court decided the prior appeal in *Mitchell v. MAP Resources, Inc.*, 649 S.W.3d 180 (Tex. 2022).

connection with a tax sale following entry of a tax foreclosure judgment against Ms. Mitchell in 1999.[2] In 2015, the Mitchells filed a declaratory judgment suit seeking to quiet title to a royalty interest in real property.

In the prior appeal, the Texas Supreme Court held that the 1999 tax judgment against Ms. Mitchell was void due to invalid service by posting on the courthouse door, i.e., that "because [public] deed records here featured [Ms. Mitchell]'s mailing address, . . . serving her by posting did not comply with procedural due process." *Mitchell v. MAP Resources, Inc.*, 649 S.W.3d 180, 184 (Tex. 2022). Accordingly, the Supreme Court rendered summary judgment on that issue. *Id.* at 197. But it did not decide the entire case, determining that summary judgment could not be rendered either way on the competing summary judgment motions pertaining to two issues raised by Map: (1) whether the Mitchells complied with Texas Tax Code § 34.08(a), which requires a deposit to be paid before a suit challenging a tax judgment is commenced; and (2) a laches defense. *Id.* at 197.

After the case was remanded to the trial court on these two issues, Map filed a motion for summary judgment on the Texas Tax Code § 34.08(a) defense. The Mitchells filed their own motion for summary judgment, maintaining that the Supreme Court had essentially already ruled in their favor on the case as a whole, and as to Map's defenses, (1) Texas Tax Code § 34.08(a) requires them to deposit nothing because the deposit amount is predicated on the 1999 tax judgment, which the Supreme Court held was void, and (2) laches is not a recognized defense in this context, in light of the due process violation. Map also filed a plea to the jurisdiction alleging that the Mitchells lack standing to collaterally attack the 1999 tax judgment. The trial court granted the Mitchells' summary judgment motion and denied Map's summary judgment motion as well as

_____

[2] More precisely, the Pecos Bend and PBR entities and Vascocu purchased the interests and assigned a portion to Map.

its plea to the jurisdiction. This appeal followed.

## I. ISSUES ON APPEAL

Map brings four issues on appeal: (1) whether the trial court erred in granting the Mitchells' summary judgment motion and denying Map's when the Mitchells have not satisfied the mandatory deposit requirement in Texas Tax Code § 34.08(a); (2) whether the trial court erred in denying Map's plea to the jurisdiction when the Mitchells lack standing to assert a due process claim on their mother's behalf; (3) whether the trial court erred in granting summary judgment for the Mitchells when there are fact issues regarding Map's laches defense; and (4) whether, in the interest of justice, the case should be remanded to the trial court under *Gill v. Hill*, 688 S.W.3d 863, 872 (Tex. 2024), to allow Map to develop further facts regarding the adequacy of service in the 1999 tax suit.

For the reasons explained below, we reverse and remand to the trial court for further proceedings.

## II. MAP'S PLEA TO THE JURISDICTION

We begin with Issue Two, in which Map argues that the trial court erred by denying its plea to the jurisdiction. In the plea, Map contends that, in 1999, the Mitchells "did not have a then-existing right affected by the 1999 Tax Suit Judgment, [thus they] have no personal standing to bring a collateral attack now."[3] We are unpersuaded by the authorities Map cites in support of its position that the Mitchells have no standing.

### A. Standing and due process claims

In support of the proposition that "[g]enerally, only the [person] that has not been properly served has standing to challenge the lack of due process," Map cites four cases in its briefing:

---

[3] Map did not raise this standing issue in the prior appeal. *See Mitchell*, 649 S.W.3d at 180.

*Southwest Construction Receivables, Ltd. v. Regions Bank*, 162 S.W.3d 859 (Tex. App.—Texarkana 2005, pet. denied); *FFGGP, Inc. as Tr. of Windward Trace 9131 Land Tr. v. MTGLQ Inv'rs, LP*, 646 S.W.3d 30 (Tex. App.—San Antonio 2022, no pet.); *Goodwin v. Goodwin*, No. 01-21-00286-CV, 2023 WL 2025719 (Tex. App.—Houston [1st Dist.] Feb. 16, 2023, no pet.) (mem. op.); and *Lemieux v. Harley*, No. 02-24-00009-CV, 2024 WL 3282209 (Tex. App.—Fort Worth July 3, 2024, no pet.) (mem. op.).

*Goodwin* and *Lemieux* are both based on the principle that a party cannot assert a due process violation allegedly suffered by another person if the party's own rights are not in some way affected. *See Goodwin*, 2023 WL 2025719, at *6 ("We cannot reverse part [of an eviction judgment] based on [an evicted defendant's] complaint of harm to another person, even if that other person is his wife."); *id.* ("[A]n appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others.") (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000)); *id.* ("If we were to rule on the merits of an issue affecting a person who is not a party to this appeal, we would be issuing an advisory opinion, which we have no authority to do."); *see also Lemieux*, 2024 WL 3282209, at *5 ("[B]ecause Appellants [mother and stepfather of an allegedly impaired ward] have not shown that they were personally injured by the constable's alleged failure to properly serve [the ward] with citation, the trial court correctly concluded that they lacked standing to challenge the agreed order on due-process grounds."); *id.* at *4 ("Appellants themselves were not prevented from appearing and meaningfully participating in the guardianship case. Indeed, Appellants have not shown—nor can judicial imagination fathom—how their legal interests were at all affected by the allegedly defective service upon [the ward].").

While we agree with the principle underlying *Goodwin* and *Lemieux*, we conclude that it does not apply here, since the Mitchells assert that the violation of their mother's due process rights

affects their own rights to the mineral interests at issue.

In contrast to *Goodwin* and *Lemieux*, *Southwest Construction* and *FFGGP* both suggest that a party cannot assert a due process violation allegedly suffered by another person, even if the party's own rights are affected. *See Southwest Constr.*, 162 S.W.3d at 864 (holding that civil conspiracy defendants could not raise issue of lack of proper service on codefendant, even though codefendant was primary malfeasant and necessary party to prove conspiracy against remaining defendants); *see also FFGGP*, 646 S.W.3d at 37 (holding that lienholder seeking to avoid res judicata effect of default judgment against it in prior suit could not raise issue of lack of proper service on codefendant in prior suit, even though lack of service on codefendant would preclude judgment from being final as to lienholder).

Although we refrain from discussing our view of whether *Southwest Constr.* or *FFGGP* correctly applied the law in the precise contexts in which they were decided, we conclude that their holdings do not apply here, as they are inconsistent with the principle that a party generally has standing to assert matters that affect its rights. *See, e.g.*, *McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 235 (Tex. 2001) (holding that non-settling defendant has standing to contest certification of settlement class if certification adversely affects it); *Torrington*, 46 S.W.3d at 843 (citations omitted) ("Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others. The converse proposition, however, is also true: a party whose own interest is prejudiced by an error has standing to appeal."); *Horst v. Lightfoot*, 132 S.W. 761, 762 (1910) (holding that party claiming title to interest in real property can assert that, as a result of a due process violation, a prior judgment did not transfer title from its predecessor).

**B. Standing and property claims**

In support of the proposition that "a party with 'no ownership interest' in property that is

foreclosed on in a delinquent tax suit 'at the time of the tax judgment and tax sale' has 'no due process rights to notice or service of the delinquent-tax lawsuit or the subsequent sale,'" Map cites *American Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 516 (Tex. App.—Fort Worth 2015, pet. denied) and *Glover v. Union Pac. R. Co.*, 187 S.W.3d 201, 209 (Tex. App.—Texarkana 2006, pet. denied).

*Pirkle*, like this case, involved a claim brought by a successor to a party whose due process rights were allegedly violated in connection with a tax foreclosure proceeding. 475 S.W.3d at 512–13. There, the successor was a party who purchased the property interest at issue "armed with actual knowledge" of the tax sale, whereas here, the Mitchells inherited the property interest at issue and "[t]he record is devoid of information regarding how and when they learned of the judgment." *Compare Pirkle*, 475 S.W.3d at 516 to *Mitchell*, 649 S.W.3d at 197. Additionally, while *Pirkle* held that the successor party there lacked standing based on an "inquir[y] as to whether there are notions of equity and public policy that would vitiate the assignment of the claim under the circumstances," 475 S.W.3d at 519, *Pirkle* was decided in 2015, before the Supreme Court in *Mitchell* suggested that related concerns might be considered in a different framework, i.e., in the context of an equitable affirmative defense, as explained in our discussion of laches below.

*Glover* involved neither a tax judgment nor a due process claim, but did, as Map correctly notes, include in its summary of relevant law the statement that "[t]he cause of action for an injury to property belongs to the person owning the property at the time of the injury." *Glover*, 187 S.W.3d at 209. In contrast, here the Mitchells' claim is not one involving "an injury to property," but rather a declaratory judgment suit seeking to quiet title. And Map does not explain why the Mitchells' title-based claim should be treated the same as a claim to recover for an injury to property.

### C. Standing and assignability of claims

Map also argues that for the Mitchells to have standing to pursue their quiet-title suit, their mother's due-process claim must have survived her death. From this premise, Map contends that no such claim survived because it was not assignable. In support of this contention, Map notes, "[t]he test most commonly used to determine survivability is whether or not the cause of action may be assigned," and "[i]n this state it is the rule that if a cause of action is not assignable, it does not survive," citing *Harding v. State Nat'l Bank of El Paso*, 387 S.W.2d 768, 769 (Tex. App.—El Paso 1965, no writ). And while Map concedes that "Texas law generally allows for the assignment of claims," it argues "there are exceptions to that rule—such as when an assignment would 'prejudice the parties.'" Relying on this exception, Map contends that assigning Ms. Mitchell's claims to the Mitchell heirs would prejudice it, given that "because [Ms. Mitchell] is deceased, Map—which was not involved in or a party to the Tax Suit—cannot examine [her] to test the validity of the due process allegations asserted."

However, even assuming the Mitchells' quiet-title suit involves assigning a claim, Map's authority for the "prejudice" exception to the general assignability of claims is *Pirkle*. As stated above, *Pirkle* was decided before *Mitchell* suggested that related concerns might be considered in the context of an equitable affirmative defense. Again, we follow *Mitchell*'s lead in addressing such concerns in our discussion of laches below.

Concluding Map has not established that the Mitchells lack standing, we overrule Issue Two.

## III. REMAND REQUEST UNDER *GILL*

We address Issue Four next. Map asks us to "reverse the [trial court's summary] judgment for the Mitchells and remand the case in the interest of justice so that Map may develop and raise the issue of whether the warranty deeds conclusively establish that Elizabeth Mitchell was not

properly served." In support of this request, Map cites *Gill v. Hill*, which reversed and remanded a summary judgment "based on intervening developments in the controlling law." 688 S.W.3d at 872.

*Gill* arose out of the same 1999 tax suit as this case (over 250 taxpayers were adjudged delinquent in the suit). *Id*. at 866, 868. Like Map, the defendants in *Gill* purchased certain mineral interests at the ensuing 1999 tax sale and, more than a decade-and-a-half later, were sued by successors-in-title—and, like the Mitchells, immediate heirs—to the prior owners who had been adjudged delinquent. *Id*. at 866. The plaintiffs in *Gill* also claimed their predecessors' due process rights were violated by improper service by posting in the tax suit. *Id*. But while the Mitchells presented evidence to support their position—namely, public deeds on file in 1999 with Ms. Mitchell's mailing address—the *Gill* plaintiffs presented no evidence of a due process violation. *Id*. at 868, 871. In an attempt to overcome this deficiency on appeal, the *Gill* plaintiffs asked the Supreme Court to take judicial notice of its own conclusion in *Mitchell* that Ms. Mitchell was improperly served in the 1999 tax suit, arguing that if service by posting was improper for one defendant in that suit, the same was true for others. *Id*. at 871.

The Supreme Court rejected this argument for two reasons. First, it explained that appellate courts may take judicial notice only of facts either "generally known within the trial court's territorial jurisdiction" or "accurately and readily determin[able] from sources whose accuracy cannot reasonably be questioned," neither of which category includes facts such as "whether a particular type of notice comports with due-process." *Id*. Second, the Supreme Court explained that whether due process was afforded a particular party is an "individualized inquiry," and "the facts that made notice by posting insufficient . . . in *Mitchell* do not necessarily make notice by posting improper for [the *Gill* plaintiffs' predecessors]." *Id*. The Court explained:

> [T]he appropriate level of diligence needed to satisfy due process is an

individualized inquiry. If the evidence shows that [the *Gill* plaintiffs' predecessors] w[ere] nowhere to be found after a diligent inquiry, then alternative service by posting may have sufficed. *See Mullane* [*v. Central Hanover Bank & Trust Co.*], 339 U.S. [306,] 318 [(1950)] (distinguishing the appropriate notice for those "whose interests or addresses" are unknown); *Walker v. City of Hutchinson*, 352 U.S. 112, 116, [] (1956) ("[I]n some cases it might not be reasonably possible to give personal notice, for example where people are missing or unknown."); *see also Mitchell*, 649 S.W.3d at 189–90 (discussing what distinguishes the adequacy of notice by posting versus notice by service). Unlike the petitioners in *Mitchell*, the [*Gill* plaintiffs] adduced no individualized proof regarding the ease or difficulty with which [their predecessors] could have been located and served.

*Id*. As a result, in the absence of such individualized proof, the Supreme Court concluded that the trial court in *Gill* correctly granted, and we correctly affirmed, summary judgment in favor of the defendants, i.e., the parties who acquired the property at the tax sale. *Id*.

However, while individualized proof will now be required in similar cases moving forward, the Supreme Court did not affirm *Gill* based on lack of such proof. Instead, it vacated the judgments below and remanded *Gill* to the trial court "in the interest of justice." *Id*. at 872. The Supreme Court explained that "events surrounding this case have not been typical," and during the time the appeal had been pending, the law had developed in "meaningful respects." *Id.* at 871. In particular, the Supreme Court pointed to *Draughon v. Johnson*, which it decided in 2021, and *Mitchell*, its opinion in the prior appeal of the present case. Each opinion clarified an important question: (1) "which side bears the burden to demonstrate a due-process violation that renders a statute of limitations inoperable?" (*Draughon*) and (2) "what evidence is admissible to prove such a violation?" (*Mitchell*). *Id*. at 871–72.

Noting that a remand may be granted "when justice requires" based on "intervening developments in the controlling law," the Supreme Court remanded *Gill* because the proceedings below "took place without either side having the benefit of . . . *Draughon* or *Mitchell*, both of which substantially clarified the applicable law and likely would have affected the parties' motion practice." *Id.* at 872.

9

Map correctly points out that after the trial court here rendered its current judgment, *Gill* recognized that the Supreme Court's 2022 opinion in this case modified the law on which Map had relied, i.e., it clarified the law by newly holding that, contrary to the general rule, deed records are not extrinsic evidence in a tax suit.[4] On this basis, Map asks us to remand the case to the trial court so it can challenge the deeds. We decline to do so for three reasons.

First, while it may be true that *Gill* was issued after the trial court's current judgment, both *Draughon* and *Mitchell*, the sources of intervening changes in law identified by *Gill*, were decided well before the trial court's current judgment. That is, while *Draughon* and *Mitchell* were decided after the trial court's judgment in *Gill*, both cases were decided well before the trial court's current judgment here.[5] Map cites no authority or reasoning that would support a remand to the trial court based on a recent acknowledgment that earlier cases changed the law.

Second, in its motion for rehearing in the Supreme Court in the prior appeal, Map asked the Supreme Court to remand based on the same change in law. That request was denied. We discern no substantive difference between the request Map made then and the one it makes now. And Map identifies no reason or justification for a different result this time around.

Third, and most importantly, in its 2022 opinion in this case, the Supreme Court rendered summary judgment that the 1999 tax foreclosure judgment against Ms. Mitchell was void due to invalid service by posting on the courthouse door, i.e., that "because [public] deed records here featured [Ms. Mitchell]'s mailing address, . . . serving her by posting did not comply with

---

[4] *See Gill v. Hill*, 688 S.W.3d 869 (Tex. 2024); *Mitchell*, 649 S.W.3d at 190–91. Less immediately relevant here, *Draughon v. Johnson* clarified that when a statute of limitations defense is raised at the summary judgment stage, the defendant has the burden to disprove counter-defenses based on tolling of the limitations clock, such as tolling provisions based on competency, but the plaintiff has the burden to prove counter-defenses that seek to avoid the application of limitations entirely, such as where an underlying due process violation precludes triggering of the limitations clock altogether. *See Gill*, 688 S.W.3d at 870–71; *Draughon v. Johnson*, 631 S.W.3d 81, 85 (Tex. 2021).

[5] The trial court's current judgment was signed on March 18, 2024, and, as noted above, *Draughon* and *Mitchell* were decided in 2021 and 2022, respectively.

10

procedural due process." *Mitchell*, 649 S.W.3d at 184. That judgment is binding law of the case in this appeal. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012) ("Under [the law-of-the-case] doctrine, a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case."). Map directs us to no authority suggesting that the law-of-the-case doctrine is inapplicable here.

Accordingly, we overrule Map's Issue Four.

## IV. LACHES

Turning to Issue Three, Map argues the trial court erred in granting summary judgment for the Mitchells because there are outstanding fact issues on its laches defense. In the prior appeal, neither party had moved for summary judgment on laches, although Map had raised the issue in its response to the Mitchells' summary judgment motion. *Mitchell*, 649 S.W.3d at 195. Accordingly, the Supreme Court concluded it could not decide the laches issue, and that laches, like the § 34.08(a) issue, thus "remain[ed] open for further consideration on remand."[6] *Id*.

In remanding the laches issue, the Supreme Court expressly stated, "we take no position on whether laches or any other equitable doctrine can provide a valid defense to a notice-based collateral attack on a judgment transferring property[.]" *Id*. at 196. While the Supreme Court thus declined to decide or suggest the final outcome of this issue, it did define the contours of the law for development of the issue on remand.

The Supreme Court pointed to its holdings in *E.R.*, a termination of parental rights case, and *PNS Stores*, a slip-and-fall-case, which respectively held that "[Family Code] time limits cannot foreclose an attack by a parent who was deprived of constitutionally adequate notice," and

---

[6] While it had held that Texas Tax Code § 33.54, a statute of limitations provision, did not bar the Mitchells' collateral attack "based on a violation of . . . due process rights that render[ed] the tax judgment and tax sale void," *Mitchell*, 649 S.W.3d at 194, the Supreme Court clarified that this holding "does not necessarily resolve the [laches] issue." *Id*. at 196.

"[a] void judgment . . . can be collaterally attacked at any time" (in that case, by the defendant named in the judgment). *Id*. (referencing *In re E.R.*, 385 S.W.3d 552, 567 (Tex. 2012); *PNS Stores, Inc*. v. *Rivera*, 379 S.W.3d 267, 272 (Tex. 2012)). The Supreme Court further observed that "[m]any jurisdictions have applied this principle to conclude that laches does not generally provide a basis for refusing relief from a void default judgment," citing cases from various jurisdictions in support of this general rule. *Id*.

However, the Supreme Court noted that the general rule is not absolute: "Yet *E.R.* also concluded that '[i]f, after learning that a judgment has terminated her rights, a parent unreasonably stands mute, and granting relief from the judgment would impair another party's substantial reliance interest, the trial court has discretion to deny relief.'" *Id*. (citing *E.R.*, 385 S.W.3d at 569); *see also E.R.*, 385 S.W.3d at 569 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 66 (1982)) and at 568 n.30 (collecting cases from other jurisdictions holding that laches can prevent a challenge to an adoption decree). The Supreme Court further observed that "[o]ther states and federal jurisdictions have reached similar conclusions in both adoption and non-adoption contexts," citing cases from various jurisdictions. *Mitchell*, 649 S.W.3d at 196 n.16.

As a further refinement of the analysis, the Supreme Court noted that laches does not carry equal weight in all contexts. For example, as suggested in *E.R.*, "a judgment debtor's post-judgment diligence may be irrelevant in cases involving a default judgment for money damages." *Mitchell,* 649 S.W.3d at 196–97 (citing *E.R.*, 385 S.W.3d at 569). In a similar vein, as noted in *E.R.*, RESTATEMENT (SECOND) OF JUDGMENTS § 65 cmt. c (1982) distinguishes the applicability of laches in the context of money judgments versus contexts which involve "prominent future effects" where "reliance interests" are predictable:

> The right to avoid a judgment subject to the infirmities referred to in this Section [including inadequate notice] is not lost by reason of delay on the part of the moving party. In traditional theory this was attributed to the proposition that a "void"

12

judgment is necessarily void *ab initio* and hence can never have the effect of securing rights. It appears more accurate to say that lapse of time alone does not create reliance interests in a judgment, for when lapse of time is accompanied by change of circumstance there may be grounds for refusing to treat the judgment as a nullity. *See* § 66. Related to this is the fact that when the judgment is for money, it may not affect the parties' future conduct—and hence create interests of reliance on the judgment—until an attempt is made to execute on the judgment. Many of the cases asserting that delay does not affect the right to attack a void judgment involve attacks made in resistance to execution of money judgments. *In contrast, when a judgment has prominent future effects, such as a judgment determining marital or filial status, reliance interests are very likely to arise.*

*E.R.*, 385 S.W.3d at 567–68 (citing RESTATEMENT (SECOND) OF JUDGMENTS, § 65 cmt. c (1982)) (emphasis in original). As noted above, *E.R.* ultimately concluded that "[a]lthough courts have variously referred to a parent's inaction as waiver, estoppel, or laches, the theories merge: when a child's welfare hangs in the balance, the reliance interest created by a termination order need not yield when a parent learns of the order yet unreasonably fails to act." *Id.* at 568. Pulling the guidance together, the Supreme Court in *Mitchell* instructed the parties as follows:

> This case differs from *E.R.* in that the default judgment transfers real property rather than terminating the parent-child relationship or awarding money damages. In addition, the parties bringing the collateral attack here are the heirs of the person deprived of due process. The record is devoid of information regarding how and when they learned of the judgment. On remand, the parties are free to address these legal authorities, identify other relevant authorities for the trial court to consider, and offer evidence of any facts and circumstances relevant to MAP's laches defense.

649 S.W.3d at 197.

After the case was remanded to the trial court, the Mitchells filed a new motion for summary judgment, arguing that "[i]n Texas, a void judgment is subject to attack at any time," and "[b]ecause laches . . . is temporal in nature, this affirmative defense does not apply, a tenet understood in Texas law for well close to two centuries." Without elaborating, the Mitchells concluded that "[a]s a result, the question of when the Mitchell Heirs filed suit is completely immaterial, because under the holdings of *E.R.* and [*PNS Stores*], they could have brought their

13

collateral attack on the void Tax Suit judgment at any time."

Further, the Mitchells interpreted the Supreme Court's guidance for development of the laches issue on remand as follows: "While the Supreme Court did not explicitly rule on whether laches is available to [Map], it cast grave doubts about laches' application against an attack on a void judgment," and "the Supreme Court quite clearly signaled its likely rejection of laches as an available affirmative defense, citing to many holdings from other jurisdictions that likewise rejected laches' applicability."

Although the Mitchells went on to cite and quote the same cases the Supreme Court noted from various jurisdictions that support their position, they made no attempt to distinguish or address in any way the body of cases from Texas and elsewhere cited by the Supreme Court indicating that even if a judgment against a party is void, unreasonably standing mute while another party substantially relies on the judgment may result in relief from the judgment being denied. Further, the Mitchells provided no information regarding how and when they learned of the 1999 tax foreclosure judgment and no evidence of any other facts or circumstances relevant to Map's laches defense, contending that "consideration of evidence here is wholly unnecessary here, because under long-established Texas and Federal case law, laches is an inapplicable defense against claims attacking a void judgment."

On appeal before us, the Mitchells take the same approach, arguing that in the last appeal, the Supreme Court "all but announced that laches is not effective as a defense against a violation of due process," and "strongly signaled its disinterest in entertaining laches as a valid defense." But the Mitchells omit any mention of the Supreme Court's discussion of laches in relation to *E.R.* In particular, they point to no reason why a judgment transferring an interest in real property would not similarly involve "substantial future ramifications" or why the reliance interest created by such a judgment need yield if a successor learns of the judgment yet unreasonably fails to act—

14

especially in the tax foreclosure sale context—giving rise to that reliance interest.

In other words, the Mitchells do not justify excluding the availability of laches in the present case as a matter of law. Based on *E.R.,* and in light of the discussion above, we conclude that laches can provide a valid defense to a claim like that brought by the Mitchells. And because the Mitchells do not dispute Map's assertion that fact issues exist on its laches defense, the Mitchells have not shown themselves entitled to summary judgment on this issue. The trial court erred in ruling otherwise.

Accordingly, we sustain Map's Issue Three.

## V. TAX CODE SECTION 34.08(a)

Finally, in Issue One, Map urges us to reverse and render based on the Mitchells' failure to comply with Texas Tax Code § 34.08(a). In the prior appeal, Map argued the Mitchells' suit was barred by Texas Tax Code § 34.08(a), which provides that "[a] person may not commence an action that challenges the validity of a tax sale under [Chapter 34] unless the person: (1) deposits into the registry of the court an amount equal to the amount of delinquent taxes, penalties, and interest specified in the judgment of foreclosure . . . plus all costs of the tax sale; or (2) files an affidavit of inability to pay[.]" *Mitchell*, 649 S.W.3d at 195. In turn, the Mitchells contended § 34.08(a) does not apply to this suit, i.e., it "does not bar a collateral attack based on constitutionally infirm notice." *Id*. (citing Tex. Tax Code Ann. § 34.08(a)).

The Supreme Court noted and resolved conflicting authority on this issue by holding that "a due process violation occurring after an owner fails to pay taxes on its property does not excuse the owner from having to deposit those taxes in order to pursue a suit to recover the property." *Id*. But it also clarified that "an owner deprived of due process is entitled to notice of the amount to be deposited and an opportunity to make the deposit or file an affidavit before its suit is dismissed." *Id*. Based on the record before it, the Supreme Court then concluded:

15

> Because MAP's summary judgment evidence does not conclusively establish the amount of the required deposit (including any costs of sale) and that the Mitchells failed to deposit that amount when given the opportunity, we cannot affirm the summary judgment for MAP based on section 34.08. This issue remains open for further consideration on remand.

*Id*.

On remand, Map filed a new motion for summary judgment, asserting that the Mitchells remain non-compliant with § 34.08(a) and adducing evidence regarding the amount of the required deposit. In response to Map's motion, and in their own competing motion for summary judgment, the Mitchells argued that because the deposit required under § 34.08(a) is calculated based on information contained in the tax forfeiture judgment being challenged, and here that judgment has already been declared void by the Supreme Court, "there is no longer a judgment from which the calculation can be made," and thus they are required to deposit nothing. We disagree with the Mitchells.

In our view, the Supreme Court simply extended the Mitchells' deadline to comply with § 34.08(a), allowing them to comply *after* rather than *before* commencing suit, but did not exempt them from the deposit requirement altogether.[7] Had the Supreme Court intended as the Mitchells suggest, it would have rendered summary judgment in their favor on this issue, not remanded the issue for further consideration by the trial court. Accordingly, we hold that unless the Mitchells comply with § 34.08(a) (under which the required deposit must be calculated based on documents from the tax foreclosure proceeding and subsequent tax sale, regardless of their void status as a result of being challenged), they are precluded from proceeding further and their suit must be dismissed.

---

[7] One of the components of the required deposit is the amount of delinquent taxes. *See* Tex. Tax. Code Ann. § 34.08(a). The Mitchells do not deny that Ms. Mitchell failed to pay taxes on the mineral interests at issue.

Map's motion for summary judgment claims that "[t]he amounts Plaintiffs were required to deposit at the outset of this lawsuit are clearly stated in the 1999 Tax Suit Judgment and Sheriff's Return[.]" From these numbers, Map claims the Mitchells "could easily determine" that they are required to deposit "the following": Ms. Mitchell's delinquent tax liability ($1,851.50); interest at 5% per annum; the sheriff's fees of $1,772.96 (incurred for all the 600 or so defendants); court costs of $668 (also incurred for all the defendants); attorneys' fees of $500; and "Abstract Costs" of $52,495.28 (although the judgment itself limits this amount to $150 per defendant). The motion for summary judgment thus asserts the Mitchells' claim fails because they did not deposit $57,287.74 (the total of the above figures, excluding interest). The motion would fail for the simple reason that number is erroneous on its face because the abstract fees were specifically allocated at $150 per defendant in the judgment (even discounting whether the court costs, attorneys' fees, and sheriff's fees should be similarly apportioned). On appeal, Map retreats from this number, now claiming that the Mitchells should have deposited at least the tax delinquency amount. But that was not the argument made below, and a summary judgment "must stand or fall on the grounds expressly presented in the motion." *Keyes v. Weller*, 692 S.W.3d 274, 283 (Tex. 2024) (quoting *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)).

Based on the record before us, we reverse the summary judgment entered by the trial court in the Mitchells' favor on Texas Tax Code Ann. § 34.08(a), but cannot render summary judgment for Map on this issue, as the record does not conclusively establish that the Mitchells failed to comply with § 34.08(a) after they received notice of the amount to be deposited and an opportunity to comply with the statute. *See Mitchell*, 649 S.W.3d at 195 (citing *John K. Harrison Holdings, LLC v. Strauss*, 221 S.W.3d 785, 789 (Tex. App.—Beaumont 2007, pet. denied)) (where defendant's challenge to tax sale was barred by § 34.08(a) because it did not comply with the same after the court provided it an opportunity to satisfy the deposit requirement).

Accordingly, we sustain in part and overrule in part Map's Issue One.

## VI. CONCLUSION

For the reasons stated above, we conclude that (1) Map did not show the trial court erred in denying its plea to the jurisdiction; (2) Map did not show it was entitled to a remand to develop the issue of whether the deed records established that Ms. Mitchell was not properly served; (3) the trial court erred in granting summary judgment in the Mitchells' favor in relation to laches; and (4) the trial court erred in granting summary judgment in the Mitchells' favor in relation to Texas Tax Code § 34.08(a), but did not err in denying Map's motion on this issue.

Accordingly, we reverse and remand to the trial court for proceedings consistent with this opinion.

LISA J. SOTO, Justice

December 30, 2024

Before Alley, C.J., Palafox and Soto, JJ.
Palafox, J., concurring